UNITED STATES of America,
Plaintiff–Appellee,

v.

Sadie LATOUF (95–4095), Joseph N. Sarich (95–4112), Mario Guerrieri (95–4115), Richard A. Harakal (95–4233), Defendants–Appellants.

Nos. 95–4095, 95–4112, 95–4115, 95–4233.

United States Court of Appeals, Sixth Circuit.

Argued (95–4095, 95–4115, 95–4233) April 24, 1997.

Submitted (95–4112) April 24, 1997.

Decided Dec. 18, 1997.

Nancy A. Vecchiarelli, Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Cleveland, OH, for United States of America.

Anthony J. Vegh (briefed), Cleveland, OH, David F. Aggers (argued and briefed), Kathryn T. Joseph (briefed), Aggers & Joseph, Beachwood, OH, for Sadie Latouf.

Louis DeFabio, Samuel G. Amendolara (briefed), Youngstown, OH, for Joseph N. Sarich.

Shawn P. Martin (argued), Kevin M. Cafferkey (briefed), Cleveland, OH, for Mario J. Guerrieri.

Christopher R. Fortunato (argued and briefed), Maguire, Schneider, Zapka & Leuchtag, Cleveland, OH, for Richard A. Harakal.

Before: JONES, SUHRHEINRICH, and SILER, Circuit Judges.

JONES, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. SILER, J. (pp. 332–333), delivered a separate concurring opinion.

NATHANIEL R. JONES, Circuit Judge.

This case concerns a conspiracy to commit arson in which one defendant, Sadie Latouf ("Latouf"), engaged three other defendants, Joseph Sarich, Mario Guerrieri and Richard Harakal, in a scheme to burn down her restaurant and collect insurance proceeds. The jury convicted all of the Defendants of conspiracy to commit offenses against the United States, arson, and mail fraud. The Defendants now appeal their convictions individually and collectively, challenging federal court jurisdiction, several evidentiary rulings, the evidence and the sentencing. We now affirm.

### I.

On October 30, 1992, at 4:01 a.m., Sadie's Casablanca Restaurant exploded by means of a natural gas explosion and burned to the ground. An officer, Patrolman Ludt, ·had

been called to the scene just minutes before (3:36 a.m.) because a heat sensor in the restaurant's kitchen had activated and sent out an alarm. At that time, the officer did not discover a fire and confirmed that the building was secure. He did not immediately leave the scene, however, and was only a few hundred yards away when the explosion occurred.

When the fire department arrived part of the building had collapsed, and there was a natural gas fire in another portion of the building. All of the doors were either locked or blown off the building. One wall also collapsed and destroyed a neighboring automobile.

The government began an investigation of this fire suspecting it was arson. In September 1993, the government received word from Dennis Griffin, one of the arsonists, that he would cooperate. The government obtained information relating to the conspiracy directly from Griffin. Griffin also agreed to be wired and plant himself in the midst of the conspiracy to implicate the other members. As a result of Griffin's cooperation, the government obtained the following facts:

Defendant Sadie Latouf was the owner of Sadie's Casablanca Restaurant. Latouf purchased the restaurant in September 1991 for $270,000. She put $50,000 down, secured a loan for $185,000, and promised the remaining $35,000 to the original owners. Latouf, however, was never able to pay her full monthly payments on the loan. At times she would merely pay the interest, at other times her checks would be returned because she had insufficient funds. In some instances, she simply made no payment at all. Latouf renegotiated the loan with the bank several times. Furthermore, the past owners of the restaurant filed a lawsuit on the outstanding note, which she had not paid at the time of the explosion.

Latouf also owned another restaurant in New Castle, Pennsylvania. Until February 1992, Latouf made regular payments on this restaurant. In August 1992, the bank issued a notice of intention to foreclose her New Castle restaurant and home, after both failed to sell in an auction. During this period in August 1992, Latouf was speaking to one of

her dishwashers about trying to pay bills. She offered him and his friend $5,000 to burn down her house. Nothing appears to have occurred as a result of this offer.

Latouf, however, did contract with the other Defendants to burn down Sadie's Casablanca Restaurant. Once the major players had agreed to participate, Defendants Mario J. Guerrieri, Joseph Sarich, and Richard Harakal met with Griffin to discuss the plan. Sarich devised a plan to destroy the building with a natural gas explosion because the building was made of brick, steel, and concrete, which would not burn otherwise.

On the evening of the explosion, Harakal, Sarich, and Griffin went to the restaurant to carry out the plan. Only Latouf was to be at the building when they arrived. When they got to the restaurant, however, several cars were in the parking lot. Thus, Harakal, who knew Latouf, went in alone to have a drink and talk to Latouf.

After Harakal exited the building, the three waited for the last customers to leave. About an hour later, Harakal, Sarich, and Griffin returned to the building and set up the explosion device. They then left the building, and the explosion took place three hours later as planned.

Cigna Insurance Company ("Cigna"), a Pennsylvania-based business, insured the restaurant for $400,000—$300,000 for the building and $100,000 for its contents. In previous years, Latouf had let the policy lapse twice for non-payments of premiums. In October 1992, however, she made two payments. The last payment Latouf made was on October 20, 1992, for $2,017, just ten days prior to the fire. This was the largest payment that she ever made.

On January 6, 1993, Latouf filed a sworn statement with Cigna and claimed that her loss was $408,000 plus loss of income. When she signed the document, Latouf swore that the loss did not occur as a result of an act, design, or procurement on her part. This document was mailed to Cigna's attorneys in Philadelphia, Pennsylvania.

A grand jury investigation ensued. On March 7, 1995, Latouf appeared before the

grand jury at her own request. The grand jury returned an indictment against Latouf, Guerrieri, Sarich, Harakal, and Griffin on March 8, 1995. The grand jury charged each Defendant in a three-count indictment relating to the destruction of Sadie's Casablanca Mediterranean Restaurant. Count one charged the Defendants with conspiracy to maliciously damage and destroy Sadie's Casablanca Restaurant and to devise and attempt to defraud and obtain money from Cigna through the mail, Count two charged the Defendants with arson and Count three charged each of the Defendants with mail fraud.

On April 6, 1995, the grand jury returned a second indictment against Latouf for perjury. Griffin entered a plea agreement, whereby he pleaded guilty to count one. The district court allowed the two indictments against Latouf to be joined for trial. The jury returned guilty verdicts against all of the Defendants on all counts in the indictment. The district court sentenced Griffin to 23 months imprisonment, Latouf to 70 months, Sarich to 60 months, Guerrieri to 120 months, and Harakal to 57 months. Latouf, Sarich, Guerrieri, and Harakal filed timely notices of appeal.

## II.

### A.

■ We first consider the applicability of the federal arson statute to the defendants under the Commerce Clause.[1] All of the Defendants were convicted under the statute, which reads in pertinent part:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned ...

18 U.S.C. § 844(i). Because the "substantially affect interstate commerce" requirement is a jurisdictional element, it must be proven to the jury beyond a reasonable doubt. *See United States v. DiSanto*, 86 F.3d 1238, 1246

(1st Cir.1996); *United States v. Pappadopoulos*, 64 F.3d 522, 524 (9th Cir.1995). Thus, for a jury to find the Defendants guilty, the government must prove, among other things, that the property was either "used in" or "used in an activity affecting" interstate commerce. *DiSanto*, 86 F.3d at 1246–47; 18 U.S.C. § 844(i). Consequently, on review, this court must determine the purpose for which the building was "used." *DiSanto*, 86 F.3d at 1238.

■ Congress promulgated § 844(i) to grant the government the broadest possible reach of the federal commerce power. *Russell v. United States*, 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985) (unanimous court upholding the conviction for the arson of a two-unit apartment building because local rental is part of a larger commercial market). We recently found this statute to be constitutional because section 844(i) contains a "jurisdictional element, which ensures, through proper inquiry, that the arson in question affects interstate commerce." *United States v. Sherlin*, 67 F.3d 1208, 1213 (6th Cir.1995) (distinguishing *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)).

■ None of the Defendants contest the constitutionality of the statute, but each contends that sufficient evidence was not presented by the government at trial to establish a sufficient nexus between the restaurant and interstate commerce. At the close of the government's case the Defendants moved for acquittal pursuant to Federal Rule of Criminal Procedure 29. The Defendants argued that the government had not met its burden of showing that Sadie's Casablanca had a substantial effect on interstate commerce in order to sustain a conviction under § 844(i). This court reviews the Defendants' claim as one of insufficient evidence and, thus, views the evidence in the light most favorable to the government to see if a rational juror could have found the elements of the crime beyond a reasonable doubt. "The relevant inquiry when reviewing claims of insufficient evidence is 'whether, after viewing the evi-

---

1. Under the Commerce Clause, Congress is empowered "[t]o regulate Commerce with foreign" Nations, and among the several states, and with Indian Tribes." U.S. Const. art. I, § 8, cl. 3.

dence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Blakeney,* 942 F.2d 1001, 1010 (6th Cir.1991) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)); *United States v. Nabors,* 901 F.2d 1351, 1357 (6th Cir.1990).

In *Lopez,* Chief Justice Rehnquist pointed to three broad categories of activities that Congress may regulate under its interstate commerce power: (1) "the use of channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; (3) "those activities having a substantial relationship to interstate commerce, i.e., those activities that substantially affect interstate commerce." *Lopez,* 514 U.S. at 557–61, 115 S.Ct. at 1629–30 (citations omitted). Section 844(i), as interpreted by the Court, requires that the building destroyed must have "substantially" affected interstate commerce in some manner prior to its destruction. *Id.* at 559–61, 115 S.Ct. at 1630. In *DiSanto,* the First Circuit upheld a conviction under the federal arson statute where the building was a restaurant that received food supplies and natural gas, both of which traveled through interstate commerce. *DiSanto,* 86 F.3d at 1247. The First Circuit, however, only reviewed the case under the plain error standard because there was no objection in the district court. *Id.* Due to the failure to object and the fact that the trial was held prior to *Lopez,* the First Circuit held that the connection to interstate commerce only needed to be *de minimis. Id.*

Two circuits, however, have found that arson of a private residence is not sufficient to satisfy the jurisdictional prerequisite enunciated in *Lopez. See United States v. Denalli,* 73 F.3d 328, 330–31 (11th Cir.1996); *Pappadopoulos,* 64 F.3d at 527. In *Pappadopoulos,* the Ninth Circuit concluded that where

> Congress seeks to regulate a purely intrastate noncommercial activity that has traditionally been subject to exclusive regulation by state or local government, and

where the connection of the regulated activity as a whole to interstate commerce is neither readily apparent nor illuminated by express congressional findings, the government must satisfy the jurisdictional requirement by pointing to a "substantial" effect on or connection to interstate commerce.

*Pappadopoulos,* 64 F.3d at 527. Further, the receipt of natural gas from out-of-state sources is not alone sufficient to confer federal jurisdiction under section 844(i). *Id.* at 527–28. In *Denalli,* the Eleventh Circuit also found that the government failed to prove that the private residence, which was burned, had a substantial effect on interstate commerce. 73 F.3d at 330.

In *Sherlin,* this court found that a college dormitory has a sufficient impact on interstate commerce. 67 F.3d at 1213. In the case, eighty-six percent of the students that lived in the dormitory were from out-of-state. *Id.* Furthermore, the college itself purchased many goods from out-of-state, some presumably filled the dormitory. *Id.*

In an analogous case to the case at bar, *United States v. Flaherty,* 76 F.3d 967 (8th Cir.1996), an owner of a restaurant, which was in financial trouble, burned his restaurant to collect insurance proceeds. *Id.* at 969–70. In that case, however, the parties had stipulated that, since the restaurant purchased gas from outside the state, the interstate commerce requirement had been met. *Id.* at 973. Consequently, the Eighth Circuit avoided a commerce clause analysis.

██ None of the aforementioned cases lay out a clear test to determine whether a building "substantially affected" interstate commerce. *But see United States v. Wall,* 92 F.3d 1444, 1462 (6th Cir.1996) (Boggs, J., dissenting) (setting forth test which requires that for an as-applied challenge to a statute with a jurisdictional requirement to succeed appellant must show that the building falls outside the "judicial nexus requirement" or "logical stopping point" of the statute). Instead, the weight of the decisions indicate that as applied challenges such as *the instant* case requires this court to perform the relevant inquiry on a case-by-case basis. Thus, this court must determine whether a rational

juror reasonably could have concluded that Sadie's Casablanca Restaurant had a substantial effect on interstate commerce.

■ The government presented evidence that Sadie's Casablanca purchased meat and poultry from Jefferson Poultry in New Castle, Pennsylvania, on a regular basis. Additionally, Sadie's Casablanca was insured by Cigna, which has its headquarters in New Castle, Pennsylvania. Although these contacts standing alone may not have been sufficient to demonstrate the requisite "substantial" effect on interstate commerce, this court must consider these contacts in the aggregate. *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) (holding production and consumption of home-grown wheat has effect on interstate commerce in the aggregate). In *Lopez* the Court distinguished statutes that regulate intrastate economic or commercial activity from those that regulate noneconomic activity, like possessing a gun around the school grounds or burning down a house. *Lopez*, 514 U.S. at 559–63, 115 S.Ct. at 1630–31; *see also United States v. Gomez*, 87 F.3d 1093, 1095–96 (9th Cir.1996) (affirming conviction of arson of six-unit apartment building because considered in the aggregate the rental of one unit can have a substantial effect on interstate commerce). The Court thus refrained from overruling *Wickard,* and in turn, chose not to address the aggregate theory test, which therefore remains the appropriate test.[2] Under that test, the economic activity undertaken by Sadie's Casablanca, when viewed in the aggregate, had a substantial effect on interstate commerce.[3]

■ Relatedly, Defendant Latouf also submitted a jury instruction which stated that the activity of the restaurant must have a "substantial economic effect on interstate commerce." The district court declined to use the instruction and instead used its own instruction. Although no party objected to the instruction given by the district court, the Defendants point out that we can still reach the issue because we can construe the prior objection under Rule 29 as sufficient. *See, e.g., Osborne v. Ohio*, 495 U.S. 103, 123–24, 110 S.Ct. 1691, 1703–04, 109 L.Ed.2d 98 (1990) (holding that Court could reach constitutional issue because defendant moved to dismiss prior to trial on same grounds that the jury instruction was erroneous). The Ninth Circuit has held that "only where an objection would be a 'pointless formality' will we dispense with the requirement of a formal, timely, and distinctly-stated objection." *United States v. Payne*, 944 F.2d 1458, 1464 (9th Cir.1991) (citation omitted). The Ninth Circuit has further held that it would be a "pointless formality" to object when you offer an alternative instruction. *Id.* In this case, Latouf offered an alternative instruction and argued that the count should be dismissed pursuant to Rule 29. Consequently, an objection would have been a "pointless formality" because the Defendants moved for dismissal under Rule 29 and submitted alternative jury instructions.

■ We look at the instructions as a whole to determine "if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72–73 (6th Cir.1990). The district court instructed the jury that "[b]usiness related property, as opposed to residential property, is considered as being used in or affecting interstate commerce even if it has a *minimal* effect on interstate commerce." J.A. at 1001 (emphasis added). The Defendants argue that it was extremely prejudicial to instruct that the effect only had to be minimal. They would be correct only if *Wickard* was no longer good law. Since *Wickard* still remains the controlling decision, we are bound by the aggregate theory and its attending inferences that *de minimus* interstate economic

---

2. *Lopez* and the cases that followed left many unanswered questions. For example, if an individual resides in Ohio and routinely purchases groceries in Kentucky, may an arsonist who destroys the Ohio residence be punished under the federal arson statute? Is commercial activity a presumptively justifiable basis for prosecution under the Commerce Clause?

3. Given our holding that § 844(i) was properly applied in this case, we need not consider the contention of Latouf that the mail fraud and conspiracy charges cannot be upheld if the district court erred on the arson count.

activity can be substantial if taken in the aggregate.

The Defendants also claim that the district court instructed the jurors that the interstate commerce element had been met. This reading of the district court's instruction is incorrect. The district court instructed the jury that "if you find ... beyond a reasonable doubt that the property in question comes within the definition of property used in or affecting interstate commerce ... I instruct you as a matter of law that the second element of the offense is satisfied." This instruction was correct because as long as they found that Sadie's Casablanca affected interstate commerce, then the court was correct to instruct them that this element would be met.

### B.

█ The trial court allowed the government to introduce evidence regarding Latouf's comments to two of her employees that she wanted her house burned down and would give them $5,000. Latouf argues that this evidence was improperly admitted. While we substantially agree with Latouf's allegation, the "harmless error" doctrine precludes a finding in her favor.

█ This court reviews the district court's admission of evidence under Fed. R.Evid. 404(b)[4] under the following three-step standard:

First, we review for clear error the district court's factual determination that a prior act occurred. Second, we review de novo whether the district court made "the correct legal determination" that the evidence was admissible for a legitimate purpose. And third, we review for an abuse of discretion the district court's determination that the "other acts" evidence is more probative than prejudicial.

*United States v. Johnson,* 27 F.3d 1186, 1190 (6th Cir.1994) (citation omitted).

The government brought the statement of Latouf into evidence through two employ-

ees—Tyrone Campbell and Richard Whitlow. As an initial matter, this court must determine whether the district court properly found that the prior bad acts had actually occurred. In the case below, the court did not make an explicit finding prior to its admissibility ruling. The district court summarized its findings on the matter as follows:

I have read the motion in limine and the Government's notice of intention to use the evidence, and I studied it carefully, because clearly such evidence has the potential for being very damaging and prejudicial.

And taking everything into account I believe that the testimony that's the subject of this motion is relevant on the issue of plan, certainly, and probably also with respect to the issue of motive. And I think in balancing everything, that the probative value outweighs the prejudicial effect. And the Court will give the proper instruction to the jury at the time the evidence is produced.

This statement of the district court judge did not take into account any factual finding that the overtures of premeditation allegedly made by Latouf had been actually made. Without this predicate finding, the district court committed clear error. *Johnson,* 27 F.3d at 1190.

█ Next, we must review *de novo* whether the district court made the correct legal determination as to the admissibility of the Campbell and Whitlow testimony. The government argues that it was properly admitted to show motive and a common scheme or plan, and we agree. Fed.R.Evid. 404(b). In closing argument, Latouf contested that the government had not shown motive, that she had no plan to burn down the restaurant, and that there was no purpose for her to burn it down. Consequently, on the basis of motive alone, the district court's legal review was correct, because the Defendant placed motive in issue. "[T]he government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or

---

**4.** Rule 404(b) provides in pertinent part:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity

therewith. It may, however, be admissible for other purposes, such as proof of motive, ... preparation, plan....

conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove." *United States v. Merriweather,* 78 F.3d 1070, 1076 (6th Cir.1996).

■■■ Finally, the district court must determine whether the probative value of the Campbell and Whitlow testimony outweighed the prejudice. *Id.* at 1077. The district court found the probative value to be higher than the prejudice but did not state its rationale. Rulings on this balancing consideration must be taken with great care. *Johnson,* 27 F.3d at 1193 (holding that the trial court must "decide carefully whether it will be more substantially prejudicial than probative"). Furthermore, "[o]ne factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof." *Merriweather,* 78 F.3d at 1077.

We find that other proof was available to render the testimony of Campbell and Whitlow redundant and, therefore, the statements were highly prejudicial. The government had ample evidence of Latouf's financial problems to prove motive and plan. The government also had the testimony of Griffin who was allegedly involved in the arson. Finally, the government had tape recordings of Latouf talking about the money. Thus, taking into consideration the other evidence available to the government, it is clear that the statements were unneeded and unduly prejudicial.

Finally, as to the instructions regarding this testimony, the district court must give an instruction that "clearly, simply, and correctly" instructs the jury as to the specific purpose for which it may consider the evidence. *Johnson,* 27 F.3d at 1193. The district court issued a poorly timed, albeit appropriate, limiting instruction.[5] The *Johnson* decision makes clear that an in-

struction should be given immediately to cure the prejudicial effect of testimony such as that presented in this case. *Id.* The testimony at issue was introduced on a Friday and the limiting instruction was not provided until the following Monday. We find prejudice here due to the fact that the weekend passed before a limiting instruction was given.

Overall, this bothersome admission by the district court amounts to definite error. The error, however, is harmless in light of all of the other evidence presented because it did not materially affect the verdict. *United States v. Fountain,* 2 F.3d 656, 669 (6th Cir.1993) (finding harmless error where "overwhelming evidence, properly admitted, established [the facts at issue notwithstanding the tainted evidence]").

### C.

Defendant Latouf attempted to introduce evidence at trial that she had been "shaken down" by the mafia for protection money. She further sought to introduce evidence that this happened somewhat frequently in Niles, Ohio—mafia shakedowns and "accidental" fires. She proffered two witnesses who could testify that she had told them about this shakedown, and a real estate agent who was attempting to locate a new residence for Latouf. The district court excluded all of this evidence as hearsay.

■■■ While this court typically reviews evidentiary rulings under an abuse of discretion standard, this court reviews *"de novo* a district court's conclusion whether proffered evidence is inadmissible hearsay." *United States v. Fountain,* 2 F.3d 656, 668 (6th Cir.1993). Below, Latouf tried to justify the statements under the state of mind exception to the hearsay rule. Fed.R.Evid. 803(3). The district court correctly found the state-

---

5. The trial court instructed the jury as follows:

Members of the jury, on Friday toward the end of the day you heard testimony concerning certain other things that Mr. Latouf allegedly did or discussed.

I, at this time, instruct you that you cannot consider testimony of other acts other than the ones charged in the indictment as evidence that the defendant committed the crime that she is on trial for now. Instead, you can only

consider it in deciding whether she intended, prepared, or planned for the destruction of the Casablanca Restaurant. Do not consider it for any other purpose. Remember that Mrs. Latouf is on trial here only for the crimes charged in the indictment, not for any other acts. Do not return a guilty verdict unless the Government proves the crime charged beyond a reasonable doubt. Trial Tr. 413–414.

ments made to these witnesses did not reflect Latouf's "then existing state of mind." *Fountain,* 2 F.3d at 668. Latouf's counsel then requested an opportunity to brief the issue, but never submitted the requested brief. Now on appeal, she claims that the evidence should have come in under 804(5) (absence of declarant) and 803(24) (other exceptions—"catch all" section). Since Latouf (the declarant) was technically present, her theory is not permissible. However, Latouf has not shown that her statements to these witnesses had any reliability. Thus, the district court was correct to exclude the statements.

### D.

Latouf was also convicted of perjuring herself to the grand jury. Latouf now contests that the district court erred when it denied her motion to suppress her statement to the grand jury.

■■■ When reviewing a motion to suppress, this court reviews the district court's factual findings under a clearly erroneous standard, and its conclusions of law are reviewed *de novo.* *United States v. Williams,* 962 F.2d 1218, 1221 (6th Cir.1992). Latouf concedes that she voluntarily went to the grand jury, so she could tell "her side of the story." Her civil attorney, at the time, recommended that she go. He, however, did not accompany her to the proceedings.

Latouf's difficulty understanding English coupled with her lack of legal representation at the hearing made it hard for her to understand the proceedings. She concedes that her counsel was warned that attending these proceedings may ultimately hurt her and could result in perjury charges. Her counsel, however, did not prevent her from attending the proceedings. The fact that her attendance ultimately damaged her, while unfortunate, does not affect the district court's denial of her motion to suppress her statements.

■■■ Additionally, there is no violation of the Fifth Amendment here, since a defendant challenging on that basis must demonstrate that the state has compelled his or her testimony. *See New York v. Quarles,* 467 U.S. 649, 655 n. 5, 104 S.Ct. 2626, 2631 n. 5, 81 L.Ed.2d 550 (1984). Moreover, custody and interrogation are prerequisites to the triggering of Fifth Amendment privileges. *See Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1629–30, 16 L.Ed.2d 694 (1966). In this case, Latouf admits that she was not compelled to testify; thus, no Fifth Amendment rights were implicated. Additionally, she was not yet indicted and, as an uncharged person, did not have a right to effective assistance of counsel. *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). The district court properly denied her motion to suppress.

### E.

■■■ Latouf claims that the district court erred in submitting the issue of materiality, an element of the offense of perjury, to the jury. Latouf's trial counsel, however, did not object to the instruction, and, therefore, this court reviews the submission for plain error. *See United States v. Thomas,* 11 F.3d 620, 629 (6th Cir.1993).

Materiality is a mixed question of law and fact that **must** be submitted to the jury. *United States v. Gaudin,* 515 U.S. 506, 522–24, 115 S.Ct. 2310, 2320, 132 L.Ed.2d 444 (1995). Consequently, the district court did not err in submitting this issue to the jury.

### F.

■■■ Defendant Guerrieri challenges his conviction stating that the only way he could possibly be convicted is if the jury believed the testimony of Dennis Griffin—the informant. He states that this testimony should not be believed because Griffin had several incentives to lie including the reduction of his sentence and termination of community service in an unrelated case.

■■■ ■Challenges to the credibility of a witness are not, as Guerrieri contends, challenges to the sufficiency of the evidence, but instead are challenges to the quality of the government's evidence. *United States v. Farley,* 2 F.3d 645, 652 (6th Cir.1993) (citation omitted). "It is equally clear that issues of witness credibility are for the jury." *Id.*

This court entitles "special deference" to the jury's resolution of questions of credibility. *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir.1985).

■ The jury had ample opportunity to hear the impeachment of Guerrieri, since all four Defendants had every incentive to impeach him. The jury chose to believe Guerrieri, even in light of the damaging cross examination. It is not for this court to substitute its opinion for that of the jury in determinations of credibility. *United States v. Gallo*, 763 F.2d 1504, 1518 ("it is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story"). Thus, Guerrieri's objection lacks merit. Once the jury decided to believe Griffin's testimony, it had sufficient evidence to convict Guerrieri on all counts.

### G.

Guerrieri also claims the district court improperly sentenced him to a base level of 24 rather than a base level of 20 under U.S.S.G. § 2K1.4(a).

■ A court's factual findings in relation to the application of the Sentencing Guidelines are subject to a deferential "clearly erroneous" standard of review. *See* 18 U.S.C. § 3742; *United States v. Garner*, 940 F.2d 172, 174 (6th Cir.1991). Legal conclusions regarding the Guidelines, however, are reviewed *de novo*. *Garner*, 940 F.2d at 174. A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citation omitted).

■ Under U.S.S.G. § 2K1.4(a)(1) a person must be sentenced to a base level 24 if he created "substantial risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly" or if the arson involved "the destruction or attempted destruction of a dwelling." On the other hand, the base level must be 20 if the defendant created a risk of death or serious bodily injury unknowingly or destroyed or attempted to destroy a structure other than a dwelling. U.S.S.G. § 2K1.4(a)(2). In this case, a dwelling was not involved. Hence, the key inquiry is whether Guerrieri "knowingly" created a substantial risk of death or bodily injury. This is a factual finding that this court reviews for clear error. *United States v. Turner*, 995 F.2d 1357, 1365 (6th Cir.1993).

The government argues that the Defendant knowingly put people at risk to suffer serious bodily injury or death. The government correctly points out that in assessing whether the defendant knowingly created such a risk, a court may consider the danger of responding firefighters and the danger to adjacent landowners. *Turner*, 995 F.2d at 1365.

In *Turner*, the defendants burned down an unoccupied building. *Id.* at 1359–60. The district court found that the defendants knowingly put the public in risk of death or serious bodily injury. This court affirmed the lower court because the fire occurred in the early morning hours, the people in the adjacent structures were probably asleep, there were windy conditions that could have caused the fire to spread, and the defendant should have known he placed firefighters at risk. *Id.* at 1365.

Guerrieri, however, indicates that this building was not burned down in a residential area, there were trees surrounding the restaurant, no one resided around the restaurant, the explosion occurred early in the morning when no one was expected to be inside, and no firemen stated during trial that they were in danger at the time of the fire. Furthermore, Guerrieri points out that Griffin testified that he drove around the building adjacent to the structure to make sure no one was there that could get hurt. Guerrieri, however, knew it would take a large explosion to blow up a building made of steel, concrete, and brick, knew the building was located next to a BP gas station, and knew that fire fighters would be in danger when they had to enter the very unstable building.

While Guerrieri may not have specifically attempted to put someone in harm's way he definitely knew the risks involved. Fires are dangerous, and at the very least Guerrieri should have expected that firefighters would face danger, including death or serious bodily injury. Thus, the district court was not clearly erroneous.

 Guerrieri further claims that he should have been granted a reduction for having a minor role in the arson. U.S.S.G. § 3B1.2 provides that the district court should decrease the offense level by 2 levels if the defendant is a minor participant in a criminal offense or by 4 levels if he was a minimal participant. We review the district court's denial of this reduction for clear error. *United States v. Miller*, 56 F.3d 719, 720 (6th Cir.1995). The Defendant must prove the mitigating factors that justify a reduction by a preponderance of the evidence. *Id.* "An adjustment is not appropriate in the absence of a finding that the defendant was 'substantially less culpable than the average participant' in the criminal enterprise." *Id.* A defendant whose participation is indispensable to the carrying out of the plan is not entitled to a role reduction. *Id.*

The government presented evidence that Guerrieri recruited Griffin, paid him, and was the contact to Latouf. Guerrieri was definitely not a main player in this scheme, but his import in the overall scheme justifies his sentence.

## H.

As noted above, the testimony of Griffin was sufficient to link Harakal and Sarich to the arson. The fact that Griffin was a co-Defendant who pled to the crime does not make his testimony irrelevant. *United States v. Spears*, 49 F.3d 1136, 1140 (6th Cir.1995). The jury had an opportunity to reject his testimony for lack of credibility but declined to do so. *Id.* ("The testimony of an accomplice, even if uncorroborated, will suffice to support a conviction under federal law."). Viewing the evidence in the light most favorable to the government, sufficient evidence existed to convict Harakal and Sarich.

Consistent with the findings made herein on review, we **AFFIRM** the challenged convictions entered below.

SILER, Circuit Judge, concurring.

I concur in the conclusions reached in the well-reasoned majority opinion. However, I concur separately to disagree with some of the preliminary conclusions reached by the majority in Part II.B.

The majority opinion determined that it was "clear error" and "definite error," although harmless, when the court admitted evidence of Latouf's solicitations to two of her employees that she wanted to burn her house down for a $5,000.00 fee. In my opinion, it was not error to have admitted this evidence. The majority is correct in stating that the court should find that the prior bad acts, that is, the solicitation to burn the house, had actually occurred. However, Latouf did not ask the court to make such a finding, and Latouf does not contest in her brief in this court that the statements had been made. Because of that, I would not find that it was error under *United States v. Johnson*, 27 F.3d 1186 (6th Cir.1994). Latouf does not claim even yet that the statements were not made; she only claims that they were made in jest, as stated by the witnesses, Whitlow and Campbell.

The thrust of her argument in contesting that this evidence should not have been admitted is that the prejudice outweighed the probative value of it, as the majority opinion also discusses. Certainly, there was other proof available to demonstrate motive and intent. As the majority observes, "One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof." *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996). However, that decision did not say that was the only factor, and I would not find that the court abused its discretion in admitting this evidence because the court found that the probative value did outweigh the prejudicial effect. I would not criticize the district court for failing to give its rationale behind that finding, unless Latouf specifically requested it, which she did not.

I also do not find that the failure to give the corrected instruction immediately constitutes error. It is true that in *United States v. Johnson*, 27 F.3d at 1193, this court held that after "the jurors are permitted to hear of the defendant's prior misconduct, it is important that the jurors then be clearly, simply, and correctly instructed concerning the narrow and limited purpose for which the evidence may be considered." I would not find that under the circumstances of this case, before any further evidence was introduced, the court erred by instructing the jury following the weekend recess. Latouf was not demanding that the court admonish the jury prior to the weekend recess, nor did she object when the admonition was given after the weekend recess. At least, she does not show this in the record. If Latouf wanted the court to do something forthwith, such as giving the instruction before recessing for the weekend, she should have moved that it be effected then. Therefore, I would not find that the lapse of time by a recess amounted to an error by the court.