**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Andres SALAZAR, Defendant–
Appellant.**

No. 99–6229.

United States Court of Appeals,
Sixth Circuit.

March 13, 2001.

Before MERRITT, NELSON, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

In December 1998, a grand jury returned a two-count indictment against Andres Salazar, Marcos Barron, and Richard Lopez for violations of federal drug laws. Count One charged a conspiracy to distribute and to possess with intent to distribute approximately 1,300 pounds of marijuana in violation of 21 U.S.C. § 846. Count Two alleged aiding and abetting and possession with intent to distribute approximately 1,300 pounds of marijuana in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). In May 1999, Salazar executed a plea agreement with the government. Under the terms of the agreement, Salazar agreed to plead guilty to Count Two. In exchange, the government agreed (1) to recommend at sentencing a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1; (2) to recommend at sentencing the lowest possible sentence available under the guidelines; and (3) to move to dismiss Count One of the indictment. The agreement also provided:

> Should it be judged by the Government that the Defendant has committed or attempted to commit any additional crimes or has engaged in any conduct

constituting obstructing or impeding justice within the meaning of U.S. Sentencing Guidelines § 3C1.1 ... from the date of the Defendant's signing of this plea agreement to the date of the Defendant's sentencing, ... the Government will be released from its obligations and would become free to argue for any sentence within statutory limits.

Prior to sentencing, the government filed a supplemental position paper with respect to sentencing factors. In this filing, the government charged that Salazar obstructed justice by giving false testimony at the trial of his co-conspirators. Accordingly, the government requested that the district court (1) increase the offense level by two levels under U.S.S.G. § 3C1.1 and (2) deny Salazar a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. At a two-day sentencing hearing, the district court heard arguments on the government's position, and agreed to modify Salazar's sentencing factors as requested. The court sentenced Salazar to 121 months incarceration, supervised release for five years, and a fine of $17,500, a sentence at the bottom of the guideline range as modified pursuant to the government's request. Salazar timely appealed.

## I.  Statement of Facts

On December 20, 1998, a joint task force composed of agents of the Drug Enforcement Agency ("DEA") and local authorities in Memphis uncovered an operation to take delivery of a shipment of marijuana. Roderick Kelley, a confidential informant also known as "Hot Rod" or "H," arranged a meeting with Salazar for delivery of the marijuana. Officers observed a tractor-trailer pull into a loading dock followed by two cars. Wearing a microphone, Kelley talked with Salazar, Barron, and Lopez before all four men entered the trailer. Seconds later, law enforcement officers arrested the men and seized forty-four bales of marijuana arranged behind a stack of wooden pallets in the trailer. The marijuana weighed approximately 1,324 pounds.

Following his arrest, Salazar waived his *Miranda* rights and made a statement to DEA agents in which he admitted that he had agreed to arrange for the transportation of the marijuana from Memphis to San Antonio on behalf of a ring based in Laredo for which he had occasionally run small errands in the past. In this statement, Salazar did not describe the role of any co-conspirator.

### A.  Salazar's Testimony at the Trial of Co–Conspirators Lopez and Barron

After entering into the plea agreement with the government but before his sentencing, Salazar testified for the defense at the trial of his co-conspirators. Salazar testified that he recruited Lopez, a truck driver, to drive a trailer from Memphis to San Antonio. Salazar said that he had told Lopez that a friend from Memphis was opening a store in San Antonio and needed to transport some goods from Memphis to the new store. Salazar then arranged for members of the Laredo ring to load a quantity of pallets and the marijuana into the trailer at a truck stop in Texas. The marijuana was wrapped in black plastic and concealed behind the pallets. After picking up the trailer at the Texas location, Lopez locked it for the trip, kept the only key, and drove the truck to Memphis. Salazar testified that he traveled in a separate car with Barron to protect himself in case the truck was stopped on the way, and that he had planned to tell Lopez, once they arrived in Memphis, that his friend had decided not to ship the goods to San Antonio, so Lopez would be returning the truck to Texas empty. Not wanting

Lopez to know about the contraband or the true nature of the trip, Salazar said he never told him there were drugs in the trailer.

Salazar testified that when the conspirators arrived in Memphis, they proceeded to a warehouse where they were supposed to unload the marijuana. The tape of their conversation with Kelley, the confidential informant who met them at the loading dock, was played into evidence with Salazar filling in details and providing commentary. Salazar testified that Lopez unlocked the trailer and raised the door, and when the arrests occurred, Salazar and Kelley were inspecting the pallets while Lopez and Barron remained near the door.

Regarding the relationships among the conspirators, Salazar testified that he had known Lopez casually for about a year before he solicited his participation in the shipment, but that he had never done business with Lopez before and Lopez did not know Salazar distributed drugs. Salazar said that when he recruited Lopez, he agreed to pay Lopez an unspecified amount for driving the truck, he did not advance Lopez money for expenses, and he did not discuss with Lopez the nature, weight, or size of the goods to be transported. Further, Salazar testified, it was he who made the arrangements with Kelley for delivery of the marijuana in Memphis; Lopez never talked with Kelley. Prior to this shipment, Salazar had performed only small jobs for the Laredo ring, but hoped success on this mission–for which he was to be paid $525 per pound, approximately $700,000–would result in a larger role in the future. When asked why he was testifying on behalf of Lopez, Salazar explained: "I don't feel that he should get punished for something he didn't know about. I'm the one that, you know, set everything up and stuff, so I don't feel–he shouldn't get punished for this, he didn't do anything."

None of the other witnesses at trial contradicted Salazar's testimony. The court dismissed the charges against Barron at the conclusion of the government's case, and the jury deadlocked on whether to convict Lopez.

### B. Salazar's Sentencing Hearing

At sentencing, the government took the position that Salazar's testimony at trial constituted obstruction of justice; that the plea agreement explicitly provided that such conduct on Salazar's part would release the government from its obligation to make favorable recommendations with regard to the calculation of his sentence; and that because of his trial testimony, Salazar's sentence should be enhanced by two levels for obstruction and he should be denied a reduction for acceptance of responsibility. The government theorized that Lopez had in fact been intimately involved in the drug transaction, that he had knowledge of or should have known the contents of the trailer he was driving, and that Salazar had covered for Lopez in his testimony. In support of this argument, the government introduced two pieces of evidence that it disclosed to counsel representing Barron and Lopez too late for admission at trial. First, in a search of the cab of the truck Lopez had driven to Memphis, state authorities found folded on the passenger seat a list of weights corresponding to the weights of the packages of marijuana in the trailer. The list contains two columns of hand-written numbers totaling 1,326. Apparently, however, the handwriting differs from the penmanship in Lopez's driver's log. Second, a search also produced an invoice, listing a false address in Memphis, for the pallets. The authorities discovered this document in the glove compartment of the truck's cab.

Defense counsel objected to the consideration of these documents at Salazar's sentencing hearing, questioning their authenticity and reliability in light of the circumstances of their discovery. Following the arrests of the conspirators on December 20, 1998, the Tennessee Bureau of Investigations ("TBI") had taken the truck into custody; they performed an inventory search the next day. This search did not locate these documents, and the TBI conducted no further search until the week before the trial of Lopez and Barron; the documents were discovered during this latter search. No explanation for this delay was given. The district court received both documents for consideration at sentencing. Over defense counsel's insistence that Salazar's testimony and his proffer to the DEA were entirely consistent, the district court accepted the government's theory that Salazar structured the transaction to provide Lopez with feasible deniability at trial and that Lopez had indeed known about his role in the transaction. While superficially accurate, then, Salazar's testimony presented material falsehoods to the jury.

## II.   U.S.S.G. § 3C1.1

■■■■ We recently clarified the standard that governs review of a district court's application of U.S.S.G. § 3C1.1. *United States v. McDonald*, 165 F.3d 1032, 1034 (6th Cir.1999). The standard entails a three-step process. First, consistent with the statutory admonition to give due regard to the district court's application of the guidelines to the facts and opportunity to judge credibility, 18 U.S.C. § 3742(e), we review a sentencing court's findings of fact for clear error. *McDonald*, 165 F.3d at 1034 (citing *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir.1997)). Second, whether the facts found by the district court constitute obstruction of justice under the guideline presents a mixed ques-

tion of law and fact that we review de novo. *Id.* (citing *United States v. Kushmaul*, 147 F.3d 498, 500 (6th Cir.1998)); *Razavi v. Commissioner*, 74 F.3d 125, 127 (6th Cir.1996). Third, upon finding obstruction, the district court must apply the enhancement since the guideline language is mandatory. *McDonald*, 165 F.3d at 1034.

At the time of Salazar's sentencing, U.S.S.G. § 3C1.1 provided:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

The commentary to this guideline indicates that this provision applies to providing materially false information to a judge. U.S.S.G. § 3C1.1 (1998), comment. (n.4(f)). For purposes of this section, "material" information means "information that, if believed, would tend to influence or affect the issue under determination." *Id.* at (n.6). *See also United States v. Crousore*, 1 F.3d 382, 385 (6th Cir.1993). We have held that U.S.S.G. § 3C1.1, notwithstanding its literal terms applying to the "instant offense," requires enhancement when a defendant commits perjury at the trial of a co-defendant. *United States v. Walker*, 119 F.3d 403, 406–07 (6th Cir.1997); *United States v. Nesbitt*, 90 F.3d 164, 169 (6th Cir.1996).

■■■■ Salazar challenges the decision to accept the two proffered documents at the sentencing hearing on the ground that they are unreliable hearsay. As he points out, these are the only pieces of evidence that arguably conflict with the testimony

that Salazar gave at the trial of Lopez and Barron. The Federal Rules of Evidence, however, do not apply in sentencing proceedings. Fed.R.Evid. 1101(d)(3). Therefore, hearsay evidence is admissible in guideline sentencing hearings. *United States v. Davis*, 170 F.3d 617, 622 (6th Cir.1999). Accordingly, the district court did not err in considering the government's proffered documents. Once these documents were properly before the court, they provided evidence in conflict with Salazar's testimony before the jury in Lopez and Barron's prosecution. Resolution of the conflict turns on questions of credibility that the district court was best positioned to address. *United States v. Zajac*, 62 F.3d 145, 148 (6th Cir.1995); *Crousore*, 1 F.3d at 385–86. Reviewing Salazar's testimony against the evidence and arguments presented at the sentencing hearing, the district court concluded by a preponderance of the evidence that Lopez knew the contents of the truck he drove. When reviewing for clear error, this court will affirm unless "left with the definite and firm conviction that a mistake has been committed." *Latouf*, 132 F.3d at 331. This factual finding is not clearly erroneous.

Based on this finding of fact, the district court determined that Salazar obstructed justice within the meaning of U.S.S.G. § 3C1.1. Under *McDonald*, a finding of obstruction of justice presents a mixed question of law and fact that we review de novo. *McDonald*, 165 F.3d at 1034. The commentary to U.S.S.G. § 3C1.1 contains application notes that provide examples of conduct to which the guideline applies. Included in this list is making materially false statements to a judge. U.S.S.G. § 3C1.1, comment. (n.4(f)). This note certainly extends broadly enough to encompass statements made in the presence of a judge to a jury. Therefore, the district court's finding that Lopez knew the con-

tents of his truck supports the conclusion that Salazar gave materially false testimony, meaning testimony intended to affect the outcome of Lopez and Barron's trial. *See id.* at (n.6). The district court properly determined that this conduct falls within the ambit of U.S.S.G. § 3C1.1 Once the court reached this determination, it was required to apply the guideline's enhancement, and it did so.

■ On appeal, the government presents four cases from other circuits to support its argument that Salazar obstructed justice within the meaning of U.S.S.G. § 3C1.1: *United States v. Arguedas*, 86 F.3d 1054 (11th Cir.1996); *United States v. Bernaugh*, 969 F.2d 858 (10th Cir.1992); *United States v. O'Meara*, 895 F.2d 1216 (8th Cir.1990); *United States v. Mayard*, 891 F.2d 530 (5th Cir.1989). Salazar distinguishes these cases on the ground that in each the court concluded that the defendant obstructed justice after a jury convicted the co-defendants whereas here the court dismissed the case against Barron and the jury failed to convict Lopez. At the sentencing stage of the proceedings, however, deference to the jury's fact-finding role is not appropriate. *United States v. Medina*, 992 F.2d 573, 591 (6th Cir. 1993). Particularly when at sentencing the court has before it inculpatory evidence not available at trial, the jury's acquittal of a co-defendant simply has no bearing on the application of U.S.S.G. § 3C1.1

### III.  U.S.S.G. § 3E1.1

■ U.S.S.G. § 3E1.1(a) provides for a two-level reduction in a defendant's offense level if he "clearly demonstrates acceptance of responsibility for his offense." Because the determination of a particular defendant's acceptance of responsibility presents a heavily factual inquiry, we re-

view for clear error. *United States v. Mahaffey*, 53 F.3d 128, 134 (6th Cir.1995). Moreover, a challenge to a sentencing court's findings under this guideline will be successful only in "extraordinary circumstances." *United States v. Robinson*, 152 F.3d 507, 512 (6th Cir.1998). The defendant has the burden of establishing that a reduction under U.S.S.G. § 3E1.1 is warranted, and a guilty plea does not as a matter of right entitle a defendant to the reduction. *Mahaffey*, 53 F.3d at 134. While truthfully admitting criminal conduct constitutes significant evidence of acceptance of responsibility, "this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n.3). The commentary to this guideline also provides that "[c]onduct resulting in an enhancement under § 3C1.1 ... ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." *Id.* (n.4).

■■■ Finding that he obstructed justice, the district court denied Salazar a two-point reduction under U.S.S.G. § 3E1.1. Salazar argues that, even if this court accepts the government's contention that he obstructed justice, throughout his testimony at the trial of his co-conspirators and his presentencing conduct with the authorities he has fully admitted his role in the marijuana shipment and accepted full responsibility for his actions. While Salazar deserves some measure of commendation for admitting guilt and accepting responsibility for his crime, the district court's finding that the literal truth of his testimony nonetheless amounted to obstruction of justice constitutes evidence that Salazar did not come completely clean with regard to the role of Lopez in the conspiracy. Accordingly, Salazar has failed to carry his

burden of showing an extraordinary circumstance that would warrant disturbing the district court's decision.

### IV. Conclusion

For the foregoing reasons, we affirm the sentence imposed by the district court.

MERRITT, Circuit Judge, dissenting.

I do not find that the two pieces of evidence – the list of weights and the invoices – prove anything about Lopez's knowledge. How does it prove that Salazar lied at the trial? The government has not connected this up in any convincing way. Hence, I would set aside the sentence imposed by the District Court on the basis of this flimsy evidence that proves nothing.