**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Timothy G. TUCKER, Defendant–
Appellant.**

No. 99–6417.

United States Court of Appeals,
Sixth Circuit.

March 27, 2001.

Before RYAN and NORRIS, Circuit Judges; and EDGAR, District Judge.*

RYAN, Circuit Judge.

Timothy G. Tucker pled guilty to possession of a firearm with an obliterated serial number in violation of 26 U.S.C. §§ 5841, 5861(h), and 5871, and possession of a machine gun in violation of 18 U.S.C. § 922(o). This is an appeal from the district court's decision denying Tucker's motion to suppress evidence found in an allegedly unconstitutional search. Tucker also appeals the four-level enhancement of his sentence under U.S.S.G. § 2K2.1(b)(1)(D). We affirm the district court's judgment.

I.

On February 1, 1999, FBI Special Agent C.M. Sturgis led a team of law enforcement officers to 2499 Jonquil Street in Memphis, Tennessee, in order to arrest Tucker on an unlawful flight to avoid prosecution warrant in connection with an outstanding Arkansas misdemeanor charge. The officers knew that Lori French resided at the Jonquil Street residence because her name was on the lease, and they knew that Tucker resided there as well. When the officers arrived at the residence, they knocked on the door but no one answered. When they saw French drive by in her car and then stop at her mailbox, Agent Sturgis approached the vehicle. He explained what was happening and informed French that if she did anything to impede the arrest of Tucker she could be arrested. She agreed to cooperate and gave Sturgis the keys to the apartment.

Sturgis tried to enter the apartment by unlocking the deadbolt, but Tucker, who was inside, relocked the door. French was then placed in a squad car for her own safety in the event force was needed to get inside the apartment. Eventually, Tucker emerged from the residence and he was placed under arrest. He was taken to the Criminal Justice Center (CJC) where he was read his *Miranda* rights. Before leaving the apartment, Sturgis returned French's keys to her and said he might come back to further question her. According to French's recollection, Sturgis said she had "better be there" when he returned and she did not feel free to leave the apartment.

At the CJC, Tucker executed a written waiver of further *Miranda* warnings and agreed to be interviewed. Tucker said he used various aliases, including Kenneth Carter, Scott Kisrow, and Scott Kelly. This caught the agents' attention because these names had significance in a separate fraudulent check cashing scheme they

* The Honorable R. Allan Edgar, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

were investigating. Tucker also said he had previously been licensed as a federal firearms dealer, but that there were no firearms at 2499 Jonquil.

Later that evening, Sturgis and Special Agent Michael Donnelly went to 2499 Jonquil and interviewed French regarding Tucker, his aliases, and the check cashing scheme. The agents questioned French about a check she had endorsed and deposited into her account made out to Scott Kisrow, and questioned her about two other checks made out to cash from her account. She said that Tucker had given her the check to sign and that he asked her to leave a space on the back for him to endorse. She said she did not notice the name on the front of the check.

The agents asked French for permission to search the apartment and presented her with a standard consent form, which she signed. She also placed her initials next to each of the enumerated provisions on the form which stated that she had the right to refuse consent; that her consent was voluntary; and that the agents could take any items related to the investigation. Donnelly says he told French she could stop them at any time, but French denies being told this. She testified that she felt she had no choice but to sign the form.

The agents proceeded to search the small one-bedroom apartment. In a hutch, they found and seized documents bearing the names "Kelly" and "Carter," which are Tucker's aliases. In a closet, they found four guns and a bandolier of ammunition, but returned the guns when they ran a check on them and determined they were not stolen. French admitted that one of the guns might be hers.

Under the corner of the mattress of the bed they found a wallet with identification of one of Tucker's aliases. Under the head of the mattress, they found two loaded pistols, which appeared to be "legal."

Under the box spring, they found a loaded AR–15 automatic rifle fitted with a scope and laser sight. Part of the serial number had been obliterated. French said she did not know the weapons were there.

In the utility closet the agents found, among other things, roller blades, hanging clothes, a tool box and a large brown hardshell suitcase. They carried the suitcase into the bedroom and they could see that one of the latches was broken. The agents testified that the suitcase "popped open" when they placed it on the ground. French testified that the suitcase was usually locked and that the agents opened it with a key they had found elsewhere in the apartment. Inside the suitcase, the agents found silencers, pistols, and shoulder assemblies, including a MAC–11 sub-machine pistol. Some of these items were wrapped in clothing.

Also in the utility closet, next to the suitcase, the agents found two ammunition boxes with yellow markings and numbers on the outside. The boxes were not locked but the lids were closed and latched. The officers took the boxes from the closet, and opened one of them. Inside, they found a hand grenade with the pin inserted and detonation cord. They opened the second box and found a pipe bomb and more detonation cord. They removed the boxes from the premises.

Following Tucker's indictment, a magistrate judge conducted a hearing on Tucker's motion to suppress all the evidence seized in the search. The magistrate judge found many inconsistencies in the testimony of the agents and French and decided to credit the testimony of the agents.

The magistrate judge denied Tucker's motion to suppress the statements. She found that the requirements imposed in *Miranda* had been met and Tucker did not

allege or prove that his statements were coerced.

Tucker argued that although French had authority to consent to the warrantless search of her apartment, her consent was not voluntary and her authority did not encompass the suitcase and ammo boxes in the closet. However, the magistrate judge determined that French's consent to the search was voluntary based on the totality of the circumstances, including the fact that she signed the consent form and initialed each segment; that she was never threatened or punished or coerced to consent; and that she followed the officers around the apartment and pointed out which things were hers and which were Tucker's. The magistrate judge also determined that French had authority to consent to the search of the apartment because the property was for the "mutual use" of French and Tucker and both had "joint access or control."

The suitcase and ammo boxes presented a more difficult question for the magistrate judge. She clearly recognized that one may have authority to consent to a search of an "area" but not necessarily have authority to consent to a search of a closed container within that area. The magistrate judge found that the agents did not act improperly by removing the suitcase from the closet and she credited the agents' testimony that the suitcase "popped open" of its own accord. Therefore, she concluded, the guns were in plain view and fell under the plain view exception to the Fourth Amendment.

As to the ammo boxes, the magistrate judge adopted the reasoning of the Tenth Circuit in *United States v. Rith*, 164 F.3d 1323, 1327–29 (10th Cir.), *cert. denied*, 528 U.S. 827, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999), in which that court found that a third party has authority to consent to a search of the property (in that case, a

home) "if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it." *Id.* at 1329. The magistrate judge reasoned that ammo boxes, unlike suitcases, purses, or briefcases, do not usually contain personal belongings, and therefore, one would generally not have a high expectation of privacy in an ammo box. Moreover, Tucker did not take precautions to safeguard their contents; he did not lock them, and the markings on the boxes presumably indicated their contents. She concluded that because Tucker stored the boxes in the apartment that both he and French shared, he had no legitimate expectation of privacy and French could consent to searching the ammo boxes. Lastly, the finding of the hand grenade in the first ammo box was an exigent circumstance that made it permissible to search the second ammo box.

The district court adopted the recommendation from Magistrate Vescovo and denied the motion to suppress the evidence.

## II.

■ A district court's legal conclusions on suppression issues are reviewed *de novo*, and factual findings are reviewed for clear error. *United States v. Fullerton*, 187 F.3d 587, 590 (6th Cir.1999), *cert. denied*, 528 U.S. 1127, 120 S.Ct. 961, 145 L.Ed.2d 834 (2000). The decision whether the facts establish a violation of the Fourth Amendment is reviewed *de novo*. *United States v. Harris*, 192 F.3d 580, 584 (6th Cir.1999).

■ The factual findings of the district court in relation to application of the Sentencing Guidelines are reviewed under a "clearly erroneous" standard. *United States v. Latouf*, 132 F.3d 320, 331 (6th

Cir.1997). A finding of fact will be considered clearly erroneous only when the reviewing court, upon review of the whole record, finds it has a definite and firm conviction that a mistake has been made. *Id.* Legal conclusions of the district court are reviewed *de novo. Id.*

Tucker no longer claims that French did not have authority to consent to the agents' search of the apartment. However, he claims that the items found in the suitcase and ammo boxes were not encompassed by French's consent. Tucker claims that the agents were obligated to obtain a search warrant before "rummag[ing]" through his belongings and seizing the weapons.

 It is elemental that where one has a legitimate expectation of privacy, the Fourth Amendment prohibits governmental intrusion. *United States v. King,* 227 F.3d 732, 743 (6th Cir.2000). Ordinarily, law enforcement officers may not enter into an individual's home to conduct a search without first obtaining a warrant. *Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). An exception is when voluntary consent is given, *see Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), either by the person who owns the property that is about to be searched, or by one who possesses common authority over premises or effects therein. *See United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

 The specific firearm which is the basis for the two counts of the indictment to which Tucker pled guilty, was lawfully seized by the agents. French allowed the agents into the apartment that she and Tucker shared and she signed a standard consent form, which allowed the agents to search the premises. The weapon in question was found beneath the bed. Clearly, because French and Tucker exercised common authority over the premises, French had authority to allow the agents to search the apartment. Indeed, Tucker does not dispute French's authority to consent to a search of the apartment.

Although Tucker claims that the items found in the suitcase and ammo boxes were the product of an illegal search, he did not plead guilty to and was not convicted of any charges relating to those weapons. Consequently, even if the warrantless search of the suitcase and the ammo boxes were unconstitutional, the effect is harmless beyond a reasonable doubt, at least as regards the offense of conviction.

### III.

On September 17, 1999, the district court conducted a sentencing hearing and offered Tucker the opportunity to object to the presentence report. The presentence report showed that he had been charged in a six-count indictment, and had pled guilty to the first and third counts. The first count was for possessing a firearm with an obliterated serial number in violation of 26 U.S.C. §§ 5841, 5861(h), and 5871. The third count was for possessing a machine gun in violation of 18 U.S.C. § 922(*o*). The presentence report determined that his base offense level should be 20, according to Unlawful Possession of Firearms U.S.S.G. § 2K2.1(a)(4)(B), because the offense involved a firearm described in 26 U.S.C. § 5845(a), and defendant was a prohibited person (fugitive from justice). In addition, the report gave Tucker a four-level increase, according to U.S.S.G. § 2K2.1(b)(1)(D), because the offense involved 13 to 24 firearms, and as a prohibited person it is unlawful for him to possess any firearms. The report also gave him a two-level increase, according to U.S.S.G. § 2K2.1(b)(3), because the offense involved a destructive device, and a two-level in-

crease under § 2K2.1(b)(4), because a firearm had an altered or obliterated serial number. Thus, for his firearm related crimes, he received a total offense level of 28.

The court agreed with the calculations in the presentence report and sentenced Tucker to 57 months' imprisonment. Tucker's main argument was that the enhancement under Section 2K2.1(b)(1)(D) of the Sentencing Guidelines could not be imposed unless the government could show that the firearms were relevant conduct to the two crimes to which Tucker pled guilty. The court disagreed. Specifically, the court found that the dismissed counts should be included as "relevant conduct" (see U.S.S.G. § 1B1.3) in the definition of "offense" (see U.S.S.G. § 1B1.1, comment. (n.1(*l*))). It concluded that the possession of all the weapons was part of the same course of conduct and thus the four-level increase was appropriate because the offense involved 13 to 24 firearms.

In addition, even if the items were the subject of an unconstitutional search, they may still be considered as relevant conduct for the purpose of determining the appropriate sentence under the Sentencing Guidelines. This approach is followed in this circuit. *United States v. Jenkins*, 4 F.3d 1338, 1344 (6th Cir.1993).

Thus, the district court's decision to deny the motion to suppress with respect to the items found in the suitcase and the ammo boxes is correct.

AFFIRMED.