**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Andrew WELCH a.k.a. Jevon Melton,**
**Defendant–Appellant.**

**No. 00–1137.**

United States Court of Appeals,
Sixth Circuit.

July 26, 2001.

**328**

Before BOYCE F. MARTIN, JR., Chief Judge; NORRIS, Circuit Judge; and QUIST, District Judge.*

PER CURIAM.

The defendant, Andrew Welch ("Welch"), pled guilty to conspiracy to possess with intent to distribute marijuana. 21 U.S.C. §§ 841(a)(1), 846. After an evidentiary hearing during which she heard testimony from several witnesses, the district court found that Welch was responsible for one ton of marijuana. Welch was sentenced to 87 months incarceration. Welch has appealed this finding of drug quantity and argues that he was the victim of sentence entrapment. For the reasons stated by the district court and for the reasons stated below, we affirm the finding of the district court.

This Court reviews the district court's factual findings for clear error and reviews its legal conclusions de novo. *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir.1997).

This was a "reverse sting" operation—a set up by law enforcement wherein undercover law enforcement officers or those controlled by them are the "sellers" of controlled substances and the targets, in this case Welch, are the "buyers." The district court's findings as to quantity are well supported by the record. And, whatever the merits of sentencing entrapment as a legal theory—a theory which this Court has never accepted, *see United States v. Jones*, 102 F.3d 804, 809 (6th Cir.1996)—there was no sentencing entrapment in this case.

Informant Patrick Montalvo testified that he met Welch in San Bernadino, California, to discuss the sale to Welch of 70 to 80 pounds of marijuana. Montalvo and Welch then discussed the possibility of Welch purchasing 25 to 50 kilograms of cocaine. Then, Welch brought up the possibility of his purchasing up to one ton of marijuana so that he could get a cheaper price for the marijuana—about $200 per pound. Welch told Montalvo that he, Welch, could sell the marijuana for about $500 per pound. Montalvo told Welch that

* The Honorable Gordon J. Quist, United States District Judge for the Western District of  Michigan, sitting by designation.

he would look around and see what he could do about getting the marijuana for Welch. Montalvo called DEA Special Agent Alan Hargrove in California. A meeting was arranged between undercover DEA agents and Welch to discuss the terms and delivery of one ton of marijuana to Welch.

The meeting took place in San Diego, California, on about February 12, 1998. Present at the meeting were Welch, his co-conspirator and co-defendant, Nicholas Moon, Montalvo, and two undercover DEA agents, Hargrove and Gino Salazar. At the meeting, the only quantity of marijuana that was discussed was one ton. The meeting concluded with Welch agreeing to pay a total of $400,000 for one ton of marijuana, with $100,000 down coming from Welch, $100,000 down coming from Montalvo, and $200,000 to be fronted pending sale on the street. Delivery of the marijuana was to be in New York City, and Welch told Hargrove and Salazar that he could sell it in two days. Shortly after the meeting, Welch obtained $98,000 for delivery to the DEA undercover agents. This money was intercepted and seized by the DEA.

■ The government had no duty to arrest Welch when he first mentioned to Montalvo that he was interested in purchasing 70 to 80 pounds of marijuana. Since Montalvo was a mere informer, there is no practical way that responsible government agents could have stopped Welch midstream in his proposals to Montalvo. Also, the government has "no constitutional duty to call a halt to a criminal investigation the moment they have minimum evidence to establish probable cause, a question of evidence which may fall far short of the amount necessary to support a criminal conviction." *United States v. Hoffa*, 385 U.S. 293, 310, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). In this particular case, solid proof of Welch's desire to purchase marijuana was not obtained until Welch met with the undercover DEA agents and finalized price and transportation for one ton of marijuana.

The district judge fully recognized her duty to determine the drug quantity under the Sentencing Guidelines and recognized her discretion to exclude conduct which was not relevant.

■ The record supports the conclusion that Welch first raised the issue of purchasing the one ton during his conversation with Montalvo, well before Welch met any government law enforcement officer. When Welch met with Hargrove and Salazar, he had the one ton quantity already in mind. Welch also showed himself quite capable of dealing in large amounts of marijuana by his obtaining $98,000 as a down payment and by his statement that he could sell one ton of marijuana within two days. Far from being a small time marijuana dealer enticed into bigger things by outrageous conduct of government agents, the evidence shows Welch to be an eager and major conspirator with plans to obtain a ton of marijuana from California and to sell it quickly in New York City for a large profit.

Therefore, we AFFIRM the judgment of the district court.