**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Johnny VALENTINE, et al.,**
**Defendants–Appellants.**

Nos. 00–1590, 00–1603, 00–1604,
00–1615, 00–1651, 00–1598.

United States Court of Appeals,
Sixth Circuit.

July 17, 2003.

Before BOGGS, SUHRHEINRICH and CLAY, Circuit Judges.

BOGGS, Circuit Judge.

Appellants Johnny Valentine, Corey Valentine, Dedrick Valentine, Jimmy Ray Val-

entine, Kenneth Valentine, and Charles Bennett appeal numerous aspects of their convictions and sentences.[1] The convictions in this case arose from the prosecution of a drug distribution organization based in Benton Harbor, Michigan. The initial trial of the defendants lasted fourteen days. We affirm on each issue in all of the appeals.

# I

## Johnny Valentine

Johnny Valentine was convicted of one count of conspiracy to distribute and to possess with intent to distribute cocaine base (crack) and marijuana. in violation of 21 U.S.C. §§ 846 and 841(a)(1). According to the government. Johnny was responsible for purchasing large quantities of crack from Arkansas for sale in Michigan. He operated several crack houses in Benton Harbor. At his sentencing, the district court found that he was responsible for at least 1.5 kilograms of crack. which resulted in the court assigning him a base offense level of 38. The district court added two levels, pursuant to U.S.S.G. § 2D1.1(b)(1), for possession of a dangerous weapon during criminal activity. His criminal history category was determined to be I. He was sentenced to the lowest end of the guideline range, 292 months of imprisonment.

## Corey Valentine[2]

Corey Valentine was convicted of one count of conspiracy to distribute and to possess with intent to distribute crack and marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1). According to the government, Corey was a key member of the Valentine organization, responsible for transporting crack from Arkansas to Michigan. At his sentencing he was found responsible for 1.5 kilograms of crack, which resulted in the district court assigning him a base offense level of 38. The court determined that he had a criminal history category of I. While the defense argued that the district court should decrease Corey's base offense level by two levels because he was a minor participant in the criminal activity, the district court declined to do so. He was sentenced to the lowest end of the guideline range, 235 months of imprisonment.

## Dedrick Valentine[3]

Dedrick Valentine was convicted of knowingly and intentionally distributing a quantity of crack, in violation of 21 U.S.C. § 841(a)(1). He was acquitted of the conspiracy to distribute and possess with intent to distribute charge.

His pre-sentence report characterizes him as a low-level distributor of crack. At his sentencing, he was found responsible for 283.5 grams of crack, which resulted in a base offense level of 34. The district court reduced his base offense level by two levels because it found that Dedrick was a minor participant, pursuant to U.S.S.G. § 3B1.2(b), and declined to grant his motion for a downward departure. He was found to have a criminal history category of IV. The court sentenced him to the lowest end of the guideline range, 168 months of imprisonment.

## Jimmy Ray Valentine

Jimmy Ray Valentine was convicted of one count of conspiracy to distribute and to possess with intent to distribute cocaine

---

1. Due to the multiplicity of defendants with the same last name, the Valentines will often be referred to by their first names.

2. Corey Valentine was granted permission to adopt the briefs of his co-defendants.

3. Dedrick Valentine was granted permission to adopt the briefs of his co-defendants.

and crack, in violation of 21 U.S.C. §§ 846 and 841(a)(1). According to the government, Jimmy Ray would obtain drugs from his convicted co-conspirator. Jerry Butler, in Arkansas, as well as other drug suppliers in California, Texas, and other locations, for distribution to drug dealers in southwest Michigan. At his sentencing hearing, the district court determined that he was responsible for over 1.5 kilograms of crack, which resulted in a base offense level of 38. The district court increased his base offense level by two levels, pursuant to U.S.S.G. § 3B1.1(c), finding that he was an organizer or a leader of the conspiracy. The district court also declined to grant a motion for a downward departure. Jimmy Ray's criminal history category was determined to be I. The court sentenced him to the lowest end of the guideline range, 292 months of imprisonment.

### Kenneth Valentine

Kenneth Valentine was convicted of one count of conspiracy to distribute and to possess with intent to distribute crack, in violation of 21 U.S.C. §§ 846 and 841(a)(1). According to his presentence investigation report, he was responsible for arranging for the purchase of crack in Arkansas and for paying the couriers used to pick up the crack in Arkansas. At his sentencing hearing, the district court determined that he was responsible for over 1.5 kilograms of crack. resulting in a base offense level of 38. The district court declined to grant a motion for a downward departure. Kenneth's criminal history category was determined to be III. The court sentenced him

to the lowest end of the guideline range, 292 months of imprisonment.

### Charles Bennett

Charles Bennett was convicted after his second trial of one count of conspiracy to distribute and to possess with intent to distribute cocaine, crack, and marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1). His first trial ended in a mistrial after the jury deadlocked.

During Bennett's first trial, after the jury retired to deliberate, a juror was replaced by an alternate juror after she requested to be relieved due to a family emergency. Prior to replacing the juror, the court asked Bennett and his counsel to approve the change in the jury's composition, and they consented. After the jury was brought in with the new juror, the government asked for a waiver of objection to the replacement of the juror by Bennett. Bennett again consented to the replacement. After the jury began to deliberate again, Bennett requested that the court declare a mistrial due to the substitution of the alternate juror. The district court denied the motion. After supplemental instructions by the court (to which Bennett did not object), the jury deadlocked and a mistrial was ordered with respect to Bennett.

At his sentencing hearing following the second trial, the district court determined that Bennett was responsible for 1.5 kilograms of crack, which Bennett's counsel states resulted in a base offense level of 40.[4] It was determined that Bennett's criminal history category was I. Prior to

---

4. Bennett's counsel wrote an *Anders* brief on appeal, which notifies the court that counsel requests permission to withdraw from the appeal because of a lack of any good-faith issues to appeal, and identifies issues that arguably might be appealed. *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Bennett submitted a *pro se* response to the *Anders* brief in which he raised issues

he believed worthy of appeal. Neither Bennett nor the government submitted any of Bennett's documents from the district court for inclusion in the Joint Appendix. The government did not submit any argument countering Bennett's *pro se* appeal. As such, all facts pertaining to Bennett included in this opinion are taken from the *Anders* brief submitted by Bennett's counsel.

his sentencing hearing. Bennett objected to any sentence of more than 240 months because the indictment did not specify any amount of controlled substances, citing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). At the sentencing hearing, Bennett moved for a downward departure because of his ailing health. The district court sustained the *Apprendi* objection and determined that Bennett's maximum lawful sentence was 240 months. The district court also departed downward and sentenced Bennett to 180 months of imprisonment.

## II. The Indictments

■ Appellants Jimmy Ray Valentine, Johnny Valentine, Charles Bennett, Dedrick Valentine, and Corey Valentine argue that the district court lacked jurisdiction to enter a conviction and impose a sentence because the indictment failed to list certain "essential elements" of the charged offense, specifically the quantity of drugs, and for which type of drug they were to be held accountable. This argument has become unavailing since appellants filed their briefs. The Supreme Court held in *United States v. Cotton* that a defective indictment does not deprive a court of jurisdiction, in the sense of the authority to adjudicate a case. 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).

Jimmy Ray, Johnny, Dedrick, and Corey Valentine also argue that the indictment violated their Fifth and Sixth Amendment rights to confront the evidence against them, and that the judge's failure to instruct the jury that it must find a specific amount of drugs attributable to the conspiracy amounted to a "constructive amendment" to the indictment.[5] They ar-

gue that they were not afforded notice of the charges against them as they were told at their arraignments that the offense with which they were charged, § 841(b)(1)(A), carried a penalty of ten years to life. However, when the jury was instructed that quantity was not an element of the offense, it was being instructed pursuant to § 841(b)(1)(c), which carries a maximum penalty of twenty years of imprisonment. They argue that they may have been more likely to plead guilty, and would have had more leverage to do so, had they known their conviction would result in only a twenty-year maximum.

The Supreme Court in *Cotton* rejected similar arguments. The defendant in *Cotton* did not object in the district court to the fact that the sentences were based on a quantity not alleged in the indictment; therefore the Court applied a plain error analysis, pursuant to Federal Rule of Criminal Procedure 52(b). *Cotton*, 535 U.S. at 631–32. The Court concluded that there was plain error, but that even if the error affected the substantial rights of the defendant, it did not seriously affect the fairness, integrity or public reputation of the judicial proceedings, because the evidence was overwhelming and uncontroverted that the conspiracy involved at least 50 grams of cocaine base. *Id.* at 623–33. The evidence in this case is likewise overwhelming and essentially unrefuted that the participants in this conspiracy were responsible for at least 1.5 kilograms of crack.

As for appellants' arguments regarding their lack of notice, and the possibility that they might have handled their plea negotiations differently, it is as likely that they may have gone to trial knowing they were

---

**5.** Any aspects of this second argument that deal with sentencing issues will be addressed at part IV.E, *infra*.

only risking twenty years in prison instead of a maximum of a life sentence. Moreover, had they pushed the issue in the district court, the court might have acquiesced and given the jury a quantity instruction.

### III. The Trial

### A. Sufficiency of the evidence to support appellants' convictions

Appellants Dedrick, Jimmy Ray, Johnny, and Corey Valentine all argue that the evidence presented at trial was not sufficient to support their convictions. This court reviews a defendant's sufficiency of the evidence claim by considering "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). However, none of the appellants moved for judgment of acquittal at the close of the government's case-in-chief pursuant to Federal Rule of Criminal Procedure Rule 29. This court has held that failing to make this motion "constitutes a waiver of any objection to the sufficiency of the evidence." *United States v. Nesbitt,* 90 F.3d 164, 167 (6th Cir.1996). Therefore, we may only disturb the jury's verdict if it constitutes a miscarriage of justice. *United States v. Charles,* 138 F.3d 257, 265 (6th Cir.1998).

### 1. Dedrick Valentine

In order to establish the crime of distribution of cocaine base, the government must prove that the defendant: (1) knowingly or intentionally distributed cocaine base, and; (2) at the time of such distribution knew that the substance was cocaine base. 21 U.S.C. § 841(a); *United States v. Colon,* 268 F.3d 367, 376 (6th Cir.2001).

The main thrust of Dedrick's argument is that the witnesses who testified against him were not credible because they were cooperating witnesses. He argues that because the jury found him not guilty of the conspiracy charge, and because these witnesses were testifying against him as to his participation in the conspiracy, the jury must have discounted their testimony. He also takes issue with the testimony of Melvin Ferguson and Detective John Briney, who both testified regarding a "controlled buy" involving Dedrick.

Ferguson, at the behest of law enforcement, contacted Dedrick in order to make a purchase of crack. Law enforcement taped the telephone conversation between Dedrick and Ferguson, in which Dedrick agreed to sell a quarter-ounce of crack to Ferguson and agreed to meet Ferguson at a specific place designated by Dedrick. This tape was played for the jury. Detective Briney testified that he observed Ferguson drive to the meeting place, observed Dedrick approach the car and speak with Ferguson, observed him walk away from the car and disappear from view behind a house, and then return within less than two minutes and meet again with Ferguson. Ferguson drove away and was met by law enforcement. Ferguson had previously been searched in order to verify that he had no drugs on his person. He turned over the cocaine base he had just purchased from Dedrick. Ferguson also testified at trial that he had purchased one-half to one ounce quantities of crack from Dedrick on at least twelve occasions.

Dedrick argues that Detective Briney's testimony should be discounted because he was too far away to observe the transaction, and later admitted that he did not observe the transaction take place. He also argues that Ferguson should not be believed.

Credibility determinations are within the sole province of the jury, and this court grants special deference to the resolution of credibility questions by the jury. *United States v. Latouf,* 132 F.3d 320, 330–31 (6th Cir.1997). Dedrick's counsel had ample opportunity at trial to attack the credibility of all the witnesses against him. As to Detective Briney's testimony, we have held that "circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Peters,* 15 F.3d 540, 544 (6th Cir.1994) (internal quotation marks and citations omitted). There was no manifest miscarriage of justice in Dedrick's conviction.

### 2. Jimmy Ray, Johnny, and Corey Valentine

Jimmy Ray, Johnny, and Corey Valentine were convicted of conspiracy to distribute and possess with intent to distribute cocaine base. In order to meet its burden of proof, the government must show: (1) the existence of an agreement to violate the drug laws; and (2) that the defendant knew of, intended to join, and participated in the conspiracy. *United States v. Ferguson,* 23 F.3d 135, 140 (6th Cir.1994).

Appellants argue that the witnesses who testified against them were not credible because they were all hoping for reduced sentences in exchange for their cooperation. They also argue that their testimony was impermissibly vague and unreliable because it did not refer to exact amounts or specific dates of transactions.

First, defense counsel had ample opportunity to cross-examine the witnesses who testified against the appellants. Moreover, the judge instructed the jury as to how it should weigh the credibility of the witnesses, and specifically mentioned that it should consider any relationship the witness had with the government, and any reason the witness might have to lie. Credibility determinations are within the sole province of the jury, and this court grants special deference to the resolution of credibility questions by the jury. *Latouf,* 132 F.3d at 330–31.

A review of the evidence presented at trial reveals that there was sufficient evidence to convict appellants. Numerous witnesses testified to conducting crack business with appellants, including principal suppliers to the conspiracy, Jerry Lee Butler and Abdul Moore, and high-level distributors for the conspiracy, Yusef Phillips, Lubert Brock, and Myron Bennett. These witnesses testified that Jimmy Ray operated a drug distribution organization, assisted by members of his extended family and friends. Jimmy Ray would arrange for the purchase of crack from Arkansas, Corey made numerous trips to Arkansas to transport the crack back to Michigan, and Johnny was primarily responsible for its distribution in Michigan. There was no manifest miscarriage of justice in the convictions of Jimmy Ray, Johnny, and Corey Valentine.

### B. Government's Motion in limine

Kenneth, Dedrick, and Corey Valentine argue that the district court's failure to allow them to impeach Jerry Lee Butler and Yusef Phillips warrants reversal. The government moved in limine for an order preventing the defendants from recalling to the stand Sergeant Roger Lange, citing Rule 613(b) of the Federal Rules of Evidence. The defendants wished to call Sergeant Lange in an effort to impeach Butler and Phillips, two government witnesses. The motion was granted by the district court on the grounds that it was only proper to "cross-examine a witness whose [sic] taken a

statement ... if the witness [has] adopted the statement." A trial court's decision to exclude evidence pursuant to a motion in limine is reviewed for an abuse of discretion. *United States v. Phibbs,* 999 F.2d 1053, 1078 (6th Cir.1993). Appellants assert that they had intended to call Lange in order to impeach Butler and Phillips with the previous statements Butler and Phillips had made by asking Lange to state what they had told him upon first being arrested. It appears that the intent of the defense was to show that both Butler and Phillips had been more forthcoming with inculpatory statements about the defendants as it became clear they would be offered a deal by the government. Appellants further assert that they had no intention of introducing Lange's written report of the conversations, but only intended to use it to refresh Lange's recollection about the conversations.

The government argues that first, appellants never identified any inconsistent statements and were attempting to impeach the witnesses' present testimony with prior silence. Moreover, the government argues that neither Butler nor Phillips adopted Lange's report as a prior statement.

Federal Rule of Evidence 613(b) governs the use of prior statements of witnesses. It states:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

Fed.R.Evid. 613(b). The district court was correct in concluding that it would be improper to impeach either Butler or Phillips with a third-party's rendition of his statements without Butler or Phillips adopting

the statement as his own. *United States v. Saget,* 991 F.2d 702, 710 (11th Cir.), *cert. denied,* 510 U.S. 950, 114 S.Ct. 396, 126 L.Ed.2d 344 (1993). However, the attempt to question Lange regarding prior inconsistent statements made by Butler and Phillips was proper, provided the defense could identify any actual inconsistent statements. A statement used to impeach a witness must be in fact inconsistent with the witness's statements made at trial, and the court must be persuaded that this is so. *United States v. Hale,* 422 U.S. 171, 176, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975).

Defense counsel argued to the district court that he would ask Lange "did he mention [the defendant]," and Lange would say "no, I don't believe he did." Counsel further argued that the police report would only be used to refresh Lange's recollection. Counsel did not identify any statements that were even arguably inconsistent with the witnesses' testimony. Moreover, it appears from appellants' brief that counsel would have attempted to introduce Lange's testimony as to the witnesses' silence at the initial questioning and the additional information they offered as a deal became available in order to discredit the trial testimony Butler and Phillips gave. However discrediting Lange's testimony may have been, Lange would not have been testifying as to prior inconsistent statements. The district court did not abuse its discretion in excluding Lange's testimony regarding his initial conversations with Butler and Phillips.

**C. Statements by the Trial Court**

■ Kenneth, Dedrick, and Corey Valentine argue that the district court violated Federal Rule of Evidence 605, the Confrontation Clause, and the Due Process Clause when it made statements to the jury during the trial regarding the provisions of Jerry Butler's plea agreement and

the sentencing guideline range applicable to him. Butler, one of the prosecution's main witnesses, had been questioned extensively throughout his testimony by both the prosecution and the defense regarding the terms of his plea agreement, what he understood of the sentencing guidelines, and the possible sentence he might expect in return for his cooperation with the government. The government in its brief characterizes Butler as "functionally illiterate" and contends that he had difficulty articulating answers to these questions.

After Butler's testimony, the court stated to the jury: "You should consider the testimony of Mr. Butler and others with more caution than the testimony of other witnesses and you must consider whether or not the testimony was influenced by the Government's promises." The court went on to go through Butler's plea agreement with the jury. The court also explained to the jury what the sentencing guidelines are and how they would be applied to Butler. At the end of the explanation. the court stated: "What sentence will he get next week? ˙I don't know. Will it be influenced by his testimony here? I don't know. It doesn't sound like any agreement it will. That's all I can say about it. Okay."

On the day Butler was to be sentenced, the court announced to the jury that it was sentencing Butler. The court stated: "I now have a presentence report and I know how the probation officer scored him. And he scored him so that his minimum sentence would be 292 months or 24.4 years at the minimum. At the maximum, 365 months, which is, of course, 30 years." Butler was eventually sentenced to 210 months of imprisonment.

Appellants urge that the proper standard of review for evaluating claims of improper judicial conduct is *de novo*, as it is a mixed question of law and fact. They argue that no objection is necessary to preserve the error, citing Federal Rule of Evidence 605 ("The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point."). The government argues that without preservation by objection, the claim is reviewed for plain error, citing *United States v. Owens,* 159 F.3d 221, 227 (6th Cir.1998).

■ Because Rule 605 states that no objection is necessary to preserve a claim for its violation, the proper standard of review is *de novo.* *See United States v. Paiva,* 892 F.2d 148, 158 n. 8 (1st Cir. 1989); *Cohen v. United States,* No. 02–4443, 2002 WL 31856828, at *1, 53 Fed. Appx. 286 (4th Cir. Dec. 23, 2002) (per curiam) (unpublished disposition).

Rule 605 contemplates situations in which a presiding judge is called to testify in the trial over which he is presiding. Fed.R.Evid. 605 advisory committee's note. The rule "is a broad rule of incompetency." *Ibid.* The appellants' claim should be addressed under federal caselaw that governs a district court judge's power of comment and the limitations on this power. *See, e.g., Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933).

In *Quercia,* the Supreme Court reversed a conviction based upon the judge's charge to the jury in which he expressed his opinion, referring to the defendant, that "every single word that man said, except when he agreed with the Government's testimony, was a lie." *Id.* at 468, 472. The Court explained that a judge may help the jury by "explaining and commenting upon the evidence." *Id.* at 469. However, "[i]n commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he

may not either distort it or add to it." *Id.* at 470.

The district court judge committed error by adding to the testimony presented at trial when he discussed the details of Butler's presentence report. Butler's plea agreement had already been entered into evidence, and the judge was merely commenting on it and explaining it to the jury. Nevertheless. Butler's presentence report was not entered into evidence. By discussing its details, the judge was adding to the evidence presented at trial. However, we conclude that the judge's error was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 22–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The judge's error did not deny appellants a fair trial. Moreover, the judge stated to the jury just before it entered into deliberations that "[n]othing I have said or done during this trial was meant to influence your decision. You decide for yourselves whether the Government has proven the defendants guilty beyond a reasonable doubt." The judge's error does not require reversal.

## IV. Sentencing

### A. Sentencing for crack rather than marijuana

Charles Bennett, Dedrick Valentine, and Corey Valentine argue that the district court committed plain error when it sentenced them under 21 U.S.C. § 841(b)(1)(C) rather than § 841(b)(1)(D) because the jury returned a general verdict.

This argument is without merit. The record clearly shows that the verdict forms contained special interrogatories. In the case of Charles Bennett, the jury checked "Guilty," and then checked "Cocaine Base (Crack Cocaine)" in response to the statement: "We, the jury, unanimously agree that CHARLES EDWARD BENNETT

has conspired to distribute and possess with intent to distribute the following drugs: . . . ." District court docket R. 301. In the case of Corey Valentine, the jury checked "Guilty," and then checked "Cocaine Base (Crack Cocaine)" and "Marijuana" in response to the same statement. District court docket R. 247. In the case of Dedrick Valentine, in response to the statement "As to Count Two of the Indictment, charging distribution of cocaine base, we, the jury, unanimously find defendant DEDRICK QUWANTA VALENTINE . . . ." the jury checked "Guilty." *Ibid.* The district court did not commit any error when it sentenced appellants under 21 U.S.C. § 841(b)(1)(C).

### B. Downward Departures

#### 1. Dedrick Valentine

■ At his sentencing hearing, Dedrick made a motion for a downward departure based on the disproportionate impact of including acquitted conduct in the computation of his sentence. A decision not to depart downward from the sentencing guidelines is not reviewable on appeal, unless the district court was not aware of its authority to depart. *United States v. Butler,* 207 F.3d 839, 843 (6th Cir.2000).

The transcript from the sentencing hearing indicates that the district court was well aware of its discretion to depart downward on this basis, but chose not to. The district court concluded that "because Defendant's base offense level only includes relevant conduct in which he was personally engaged and does not include the conduct of co-defendants, which arguably could be attributed to him, the Court cannot conclude this case falls outside the heartland." The district court's discussion of "the heartland" expresses its awareness of its discretion to depart downward. The

district court's decision not to depart downward is not reviewable by this court.

### 2. Corey Valentine

 Corey argues that his base offense level should have been reduced by two levels because he was a minor participant in the offense. A district court's determination that a defendant did not play a minor role in the offense is reviewed for clear error. *United States v. Maliszewski,* 161 F.3d 992, 1022 (6th Cir.1998). U.S.S.G. § 3B1.2 provides that a district court should decrease a defendant's base offense level by two levels "[i]f the defendant was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). The defendant bears the burden of proving by a preponderance of the evidence the mitigating factors that justify a reduction. *Latouf,* 132 F.3d at 332. In order to prevail, the defendant must show that he was "substantially less culpable than the average participant" in the criminal enterprise. *United States v. Miller,* 56 F.3d 719, 720 (6th Cir.1995) (citations and quotation marks omitted).

Defense counsel argued at sentencing that Corey was a minor participant because he was not as "greatly involved as the other members of th[e] conspiracy," and cited Butler's statements about Corey, which essentially asserted that Corey just carried the drugs and didn't have much to do with the conspiracy. The district court, citing other testimony adduced at trial, concluded that while Corey may have been "less culpable than others in the conspiracy, [his] conduct indicates he was an average conspirator at the very least," and overruled the objection.

Corey did not present any persuasive argument or evidence at sentencing that would indicate he was "substantially less culpable than the average participant" in the conspiracy. The court carefully considered his role and compared it to the role of all of the other co-conspirators. The district court did not commit any error in denying Corey's motion for a downward departure pursuant to U.S.S.G. § 3B1.2.

### 3. Kenneth Valentine

 Kenneth argued at the sentencing hearing that the 100 to 1 sentencing ratio between crack and powder cocaine merited a downward departure because the disparity violates the United States Constitution.[6] The district court refused to grant the downward departure, stating that the Sixth Circuit has rejected every constitutional challenge to the disparity, citing *United States v. Gaines,* 122 F.3d 324 (6th Cir.1997), *United States v. Smith,* 73 F.3d 1414 (6th Cir.1996), and *United States v. Lloyd,* 10 F.3d 1197 (6th Cir.1993).

Kenneth argues that the sentencing disparity violates both the separation of powers doctrine and the Equal Protection Clause. This court has already rejected the equal protection challenge to the sentencing scheme in *Lloyd,* 10 F.3d at 1220. This court has not addressed a separation of powers challenge to the sentencing disparity.

Kenneth argues that President Clinton's failure to nominate voting members to the United States Sentencing Commission rendered the Commission useless as four members are required to promulgate a proposed guideline. On November 15, 1999, seven voting members were appointed. A bill was passed by Congress and signed by President Clinton on October 31,

---

6. The Sentencing Guidelines treat 1 gram of crack cocaine as equivalent to 100 grams of powder cocaine for sentencing purposes.

1995 that required the Commission to study and make recommendations concerning the 100 to 1 ratio. The Commission recommendation of a 5 to 1 ratio was proposed in April 1997. Soon after, the Commission lost all of its voting members. After October 31, 1998, only two nonvoting members remained on the Commission. On September 26, 2000, three months after Kenneth Valentine was sentenced, the Commission was able to begin considering limited matters.

Kenneth claims that the Executive effectively disabled the Commission (part of the judiciary) by failing to appoint members. He argues that this failure was essentially an "Executive Veto." similar to the "Legislative Veto" proscribed in *INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). He argues the President prevented the judiciary from accomplishing its function, and thus violated the separation of powers doctrine.

Although this court has not addressed a separation of powers challenge to the 100 to 1 sentencing ratio, whatever the reasons that the disparity exists, it is not a permissible basis for a downward departure. *Gaines,* 122 F.3d at 331. The district court did not abuse its discretion in refusing to depart downward as it did not have the authority to do so on this basis.

## C. Sentencing Enhancements

### 1. Johnny Valentine

■ Johnny objected at his sentencing hearing to the two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon during criminal activity recommended in the presentence report. He argues on appeal that the district court erred in overruling that objection because it did not apply the proper standard to determine whether he had used a dangerous weapon. He argues that the district court should have followed the holding in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which established the standard for enhancing a sentence pursuant to 18 U.S.C. § 924(c) for carrying or using a firearm in connection with a drug conspiracy.

A district court's determination that a defendant possessed a firearm during a drug crime is a factual finding, subject to the "clearly erroneous" standard of review. *United States v. Elder,* 90 F.3d 1110, 1133 (6th Cir.), *cert. denied,* 519 U.S. 1016, 117 S.Ct. 529, 117 S.Ct. 529 (1996). The Sentencing Guidelines provide that "if a dangerous weapon (including a firearm) was possessed, increase [the base offense level] by 2 levels." U.S.S.G. § 2D1.1(b)(1). "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). The district court must first determine whether the defendant possessed a firearm during the crime. If so, the burden shifts to the defendant to show that it was clearly improbable that the weapon was connected with the offense. *United States v. Cochran,* 14 F.3d 1128, 1132 (6th Cir.1994). "[P]ossession of a gun by one coconspirator is attributable to another coconspirator if such possession constitutes reasonably foreseeable conduct." *Ibid.* (quoting *United States v. Chalkias,* 971 F.2d 1206, 1217 (6th Cir.), *cert. denied,* 506 U.S. 926, 113 S.Ct. 351, 121 L.Ed.2d 265 (1992)).

In arguing that the district court applied the wrong legal standard by not following the standard established in *Bailey,* the appellant confuses the guideline standards with the substantive law under 18 U.S.C. § 924(c). The Supreme Court in *Bailey* specifically limited its holding to convictions under 18 U.S.C. § 924(c)(1), and indi-

cated that its holding did not apply to guideline enhancements for weapons possession. *Bailey*, 516 U.S. at 150.

The district court did not err when it applied the sentencing enhancement. At trial, witnesses testified that Johnny and two co-conspirators drove to Grand Rapids, Michigan in order to rob their drug supplier of crack at gun point. Although Johnny stayed in the car during the robbery, he was aware that a gun was to be used, as the three men had discussed the matter beforehand. After the robbery, they drove back and divided up the stolen crack. Appellant argues that he never physically possessed the firearm, and thus the sentencing enhancement should not apply. Yet, if the offense committed by a defendant is part of a conspiracy, it is sufficient if the government establishes "that a member of the conspiracy possessed the firearm and that the member's possession was reasonably foreseeable by other members in the conspiracy." *United States v. Owusu*, 199 F.3d 329, 347 (6th Cir.2000); *Cochran*, 14 F.3d at 1132. Johnny knew his co-conspirator possessed a weapon; thus the district court did not err in finding that Johnny possessed a weapon.

Johnny Valentine did not present any evidence during his sentencing to meet his burden of proving that it was clearly improbable that the weapon was connected with the offense. Therefore, the sentencing enhancement was correctly applied.

### 2. Jimmy Ray Valentine

■ Jimmy Ray's pre-sentence report recommended that his base offense level be increased by four levels because of his leadership role in the conspiracy, pursuant to U.S.S.G. § 3B1.1(a). The district court declined to do so because it was "unconvinced that he was an organizer/leader." The court found that Jimmy Ray "appears to have organized some of the major crack purchases, but did not exercise such control over the overall conspiracy that he can fairly be considered a leader/organizer in that role." Therefore, the court increased his base offense level by two levels, pursuant to U.S.S.G. § 3B1.1(c).

Jimmy Ray argues that the district court erred when it applied the two-level sentencing enhancement because Yusef Phillips was the kingpin of the organization, not he.

The government bears the burden of proving the applicability of an enhancement under § 3B1.1 of the sentencing guidelines by a preponderance of the evidence. *United States v. Finkley*, 324 F.3d 401, 403 (6th Cir.2003). We review a district court's factual determinations on this issue under the "clearly erroneous" standard, and the application of the sentencing guidelines to these facts is a question of law that we review *de novo*. *Ibid.*

In order for the court to apply an enhancement under this section, a conspirator must be found to have been "the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, comment. (n.2). Jimmy Ray points to testimony at trial that indicates he was not a leader, and that others including Phillips and Charles Bennett were the organizers. However, it is clear that there can "be more than one person who qualifies as a leader or organizers of a criminal association or conspiracy." U.S.S.G. § 3B1.1, comment. (n.4).

There was more than enough uncontradicted evidence at trial that Jimmy Ray was at least a manager or supervisor of one or more other participants in the conspiracy. Witnesses testified that Jimmy Ray oversaw the activities of several other co-conspirators, including Johnny, Corey, Dedrick, and Kenya Valentine. The dis-

trict court found that he had organized some of the major crack purchases. The district court did not err when it enhanced his base offense level by two levels, pursuant to § 3B1.1(c).

## D. Determination of Drug Amounts

Kenneth, Dedrick, and Corey Valentine argue that the district court erred when it determined that Kenneth and Corey were responsible for a course of conduct that involved the distribution of at least 1.5 kilograms each of crack, and that Dedrick was responsible for distributing 283.5 grams of crack.

Factual findings made by the district court are subject to the "clearly erroneous" standard of review on issues arising under the sentencing guidelines. 18 U.S.C. § 3741(e): *United States v. Ledezma*, 26 F.3d 636, 646 (6th Cir.1994). The government must prove the amount of drugs involved for sentencing purposes by a preponderance of the evidence. *Ledezma*, 26 F.3d at 646.

### 1. Kenneth Valentine

■ Kenneth argues that the district court could not specify the transactions for which he was responsible, that the testimony regarding drug amounts was vague, and that the witnesses were unreliable. He argues that he should be held responsible only for transactions that he agreed to jointly undertake, and should not be held liable for previous or subsequent transactions that he did not jointly undertake. He also argues that some witnesses were not specific as to whether he was buying or selling crack or powder cocaine.

The district court found that "[a] preponderance of the evidence does support the conclusion that the conspiracy purchased at least 1.5 kilograms of crack cocaine and a great deal more. Furthermore, preponderance of the evidence establishes this quantity was known by the Defendant or was reasonably foreseeable to him." The district court made this finding in spite of its belief that the quantity figures advanced by the government were inflated.

The district court did not commit clear error in its determination of the amount of drugs for which Kenneth was responsible. The district court properly erred on the side of caution and only held him responsible for that quantity of drugs for which he was more likely than not actually responsible. The district court's finding was valid because its determination was made on the basis of the totality of the evidence, and because the witnesses corroborated each other's testimony. *See Owusu*, 199 F.3d at 345. Based on the testimony, the determination that the conspiracy involved at least 1.5 kilograms of crack was conservative.

### 2. Dedrick Valentine

■ Dedrick Valentine has adopted the claims of his co-defendants, but has not submitted any argument on this claim. He was found responsible for 283.5 grams of crack. The act that led to his conviction for distribution of crack involved only 5.626 grams of crack. The district court found that he could reasonably foresee that at least 150 grams of crack were involved in the drug activities that he and his co-defendants undertook. The court was troubled by inclusion of acquitted conduct as relevant conduct for the purposes of sentencing, and did not hold him responsible for the conduct of other co-conspirators. The district court noted, however, that the testimony of three witnesses established that Dedrick himself sold over 150 grams of crack, the minimum amount necessary to establish a base offense level of 34. The testimony of these witnesses was uncontradicted. The district court did

not err when it determined Dedrick was responsible for over 150 grams of crack.

### 3. Corey Valentine

Corey Valentine also has not submitted any argument on this claim. He was found responsible for over 1.5 kilograms of crack. The district court found that the government had carried its burden of proving by a preponderance of the evidence that the conspiracy was responsible for this amount. The court found that the evidence established that this quantity of crack was known to Corey, and was certainly foreseeable to him as part of the conspiracy. The court noted that one witness stated that Corey made approximately twenty trips to Arkansas to pick up multiple kilograms of crack. The district court did not clearly err when it determined that Corey was responsible for 1.5 kilograms of crack.

### E. Apprendi Claims

■■■ Jimmy Ray, Kenneth, Dedrick, Johnny, and Corey Valentine argue that their sentences should be vacated and remanded in light of the Supreme Court's decision in *Apprendi*. *Apprendi* was decided on June 26, 2000, after all the defendants had been sentenced. However, the defendants did not object to the judge making the determination of drug quantities, and thus the review is for plain error. Fed.R.Crim.P. 52(b); *United States v. Page*, 232 F.3d 536, 543 (6th Cir.2000). Unless there is an "error" that is "plain" under current law and that affects substantial rights, we cannot correct an error. *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *United States v. Calloway*, 116 F.3d 1129, 1136 (6th Cir.1997). If the three conditions are met, we may then exercise discretion and notice the error only if the error "seriously affect[s] the

fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467.

21 U.S.C. § 841(b)(1)(C) provides for a maximum penalty of 20 years unless the crime involves a specific quantity of drugs as set forth in subsections (A) or (B). These subsections provide for a maximum sentence of 40 years if the crime involved 5 grams or more of crack, *see* § 841(b)(1)(B), and a maximum sentence of life in prison if the crime involved 50 grams or more of crack, *see* § 841(b)(1)(A).

### 1. Dedrick and Corey Valentine

Dedrick and Corey Valentine argue that they were deprived of their right to trial by jury because the element of quantity of drugs was not submitted to the jury. However, a jury did find Dedrick and Corey guilty beyond a reasonable doubt of every element of the crimes for which they were charged. Dedrick was sentenced to 168 months of imprisonment, and Corey was sentenced to 235 months of imprisonment. Dedrick was convicted pursuant to 21 U.S.C. § 841(a)(1), and Corey was convicted pursuant to 21 U.S.C. §§ 846 and 841(a). Neither of their sentences exceeds the statutory maximum of 240 months prescribed for being found guilty of conspiracy to possess with intent to distribute or distributing any quantity of a controlled substance. 21 U.S.C. § 841(b)(1)(C). Thus, there was no error. Their adopted arguments regarding the application of *Apprendi* to the sentencing guidelines will be addressed below.

### 2. Kenneth Valentine

Kenneth argues that he raised the issue of *Apprendi* error before sentencing. However, as discussed below, no error was committed.

■■■ Kenneth was sentenced to 292 months of imprisonment. Kenneth had a

previous drug conviction. 21 U.S.C. § 851 provides the procedures for enhancing a sentence for a prior conviction. The government complied with § 851 when it served and filed upon Kenneth Valentine an Information and Notice of Defendant's Prior Felony Drug Conviction. The maximum sentence for a conviction under § 841(b)(1)(C) after a prior conviction for a felony drug offense is 30 years. Kenneth's sentence did not exceed this maximum, and thus was not error.

He also argues that *Apprendi* applies to the sentencing guidelines as the guidelines are legislative acts. We have previously held that *Apprendi* does not apply to a penalty under the sentencing guidelines as long as the penalty is not in excess of the statutory maximum. *United States v. Garcia*, 252 F.3d 838, 843 (6th Cir.2001).

### 3. Jimmy Ray Valentine and Johnny Valentine

■ Jimmy Ray and Johnny Valentine were both convicted pursuant to 21 U.S.C. §§ 846 and 841(a), and both sentenced to 292 months of imprisonment. Their sentences exceed the statutory maximum of 240 months, as the jury did not find beyond a reasonable doubt drug quantities that would allow for a higher statutory maximum. The government concedes for the purposes of this appeal that the district court's instruction on quantity constituted plain error in light of *Apprendi*.[7] However, the government argues that the error did not affect appellants' substantial rights, and does not require reversal.

We follow the reasoning in *Cotton*, in which the Supreme Court declined to address whether a similar error affected the defendants' substantial rights, because even assuming they were affected, "the error did not seriously affect the fairness,

integrity, or public reputation of judicial proceedings." *Id.* at 632–33. As in *Cotton*, the evidence that the conspiracy here involved at least 5 grams of crack is "overwhelming" and "essentially uncontroverted." 535 U.S. at 633.

The amount of drugs involved in the conspiracy was conservatively estimated at between 50 and 75 kilograms of crack. It is clear beyond a reasonable doubt that had the jury been properly charged, it would have found the conspiracy to have involved at least 5 grams of crack, which would allow a maximum sentence of 40 years. 21 U.S.C. § 841(c)(1)(B)(iii). As the error of sentencing Johnny and Jimmy Ray Valentine in excess of the maximum allowable statutory penalty "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings," *Cotton*, 535 U.S. at 632–33, because it is clear beyond a reasonable doubt that any jury would have found that the conspiracy involved more than 5 grams of crack, we decline to notice the error.

### V

We therefore AFFIRM appellants' convictions and sentences.

**7.** The district court instructed the jury that quantity was not an element of the offense. This instruction was in accordance with applicable circuit precedent at the time.