**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Danny W. LEONARD, Defendant–Appellant.**

No. 03–5563.

United States Court of Appeals, Sixth Circuit.

May 5, 2004.

Moore, Circuit Judge, filed a dissenting opinion.

**600**

Candace G. Hill, Terry M. Cushing, Asst. U.S. Attorney, U.S. Attorney's Office, Louisville, KY, for Plaintiff–Appellee.

Danny W. Leonard, Lexington, KY, pro se.

Robert L. Abell, Lexington, KY, for Defendant–Appellant.

Before SILER, MOORE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.

Danny W. Leonard pleaded guilty to (1) distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1). and (2) possessing a firearm while subject to a domestic violence order in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2). He received two concurrent eighteen-month sentences. On appeal Leonard argues that the district court should have given him a reduction under § 2K2.1(b)(2) of the Sentencing Guidelines as a lawful collector of firearms.

We hold that he is ineligible for the reduction, and accordingly we affirm.

## I.

Alleging physical abuse in the past and fearing more to come. Marla Lynn Vinson obtained a domestic violence order from the local juvenile court against her boyfriend Danny Leonard. Among other things, the order prohibited Leonard from possessing any firearms.

On January 25, 2002. the Kentucky State Police executed a search warrant at Leonard's home based on information that he had purchased stolen property and traded prescription medication for firearms. During the search, police seized numerous firearms, including two .22 caliber rifles—one of them a Henry repeating rifle—and two revolvers from a living room wall display, as well as three handguns and five long guns from the back bedroom. Seven of the guns in the bedroom were discovered in an open gun cabinet. while the eighth—Leonard's son's loaded .30–.30 caliber hunting rifle—was found just outside the gun cabinet. In addition to the firearms, police seized two bottles of medicine that had been prescribed to Leonard. One bottle contained Clonazepam pills (a schedule IV controlled substance) and the other contained Toprol pills (a noncontrolled substance). In the aftermath of the search. Leonard admitted to police that he had traded 25 Clonazepam pills and $100 cash with a neighbor in return for the .22 caliber Henry repeating rifle.

On August 7, 2002. a grand jury indicted Danny W. Leonard for: (1) knowingly distributing a controlled substance (Clonazepam) in violation of 21 U.S.C. § 841(a)(1) (Count I); (2) carrying a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c) (Count II);

and (3) knowingly possessing a firearm while subject to a domestic violence order in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2) (Count III). Leonard pleaded guilty to Counts I and III. and the Government dismissed Count II.

Leonard's presentence report recommended a criminal history category of I because his sole prior conviction was for violating a domestic violence order. As for Leonard's offense level, the presentence report noted that the two counts warranted a base offense level of 14 under U.S.S.G. § 2K2.1(a)(6)(A). The report recommended a four-level increase under U.S.S.G. § 2K2.1(b)(1)(B) because police found more than eight (and less than 24) firearms in Leonard's house, all in violation of the domestic violence order. And the report recommended that Leonard receive a three-level decrease for acceptance of responsibility. Altogether, the report recommended a total offense level of 15, which in combination with Leonard's recommended criminal history category generated a sentencing range of 18 to 24 months.

Leonard's principal objection to the presentence report was that the lawful-sporting-purposes-or-collection provision set forth in U.S.S.G. § 2K2.1(b)(2) should have been applied to him. Under that provision, if the defendant shows he possessed "all" of the pertinent firearms "solely" for lawful sporting purposes or collection, the base offense level is adjusted to six, after which the defendant may still seek a reduction for acceptance of responsibility. Leonard argued that he should have been treated as a mere collector of all of the firearms.

The district court rejected Leonard's argument. In the court's view, it

> could find that all of [the firearms] except the one you traded for, you probably held for collection purposes. I'll give you that. It's the one that you traded for that I can't go with, and since I can't go there, that precludes you from getting the sporting exception. There's evidence that you traded things. There's evidence, of course, that you traded drugs for this gun.... [T]he application note talks about ... the location and circumstances of possession and actual use.... [I]t's just the whole circumstances surrounding the transaction. You know, most people generally speaking, if they want a gun for collection purposes, they don't deal drugs in exchange for it, and that just kind of gives me reason to suspect that it was not possessed solely for collection purposes. So my finding is that the sporting exception does not apply.

Sent. Hr'g Trans. at 29–30. Consistent with the presentence report, the district court imposed an 18–month sentence on each count, to run concurrently, and a one-year period of supervised release. Leonard now appeals, arguing that "[he] used the [ ] Henry repeating rifle as a decoration in his living room," Appellant's Br. at 10, and that "[t]here is no hint, suggestion or evidence that [he] ever actually used it in any other way." *id.* at 11.

We apply a clearly-erroneous standard to the district court's factual findings and give de novo review to its legal conclusions. *United States v. Talley*, 164 F.3d 989, 1003 (6th Cir.1999); *see also United States v. Morrison*, 983 F.2d 730, 732 (6th Cir.1993) (noting that the determination of whether a firearm was used solely for sporting purposes is a factual determination).

## II.

Section 2K2.1 of the Guidelines deals with the "Unlawful Receipt, Possession, or Transportation of Firearms or Ammuni-

tion; Prohibited Transactions Involving Firearms or Ammunition." In addition to requiring increases in the defendant's base offense level depending on the types of weapons involved and the defendant's prior criminal record, the section says that "[i]f the defendant ... possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition," the district court should "decrease the offense level determined above to level six." U.S.S.G. § 2K2.1(b)(2). The commentary to this provision adds the following:

> Under subsection (b)(2). "lawful sporting purposes or collection" as determined by the surrounding circumstances, provides for a reduction to an offense level of 6. Relevant surrounding circumstances include the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (*e.g.*, prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law.

U.S.S.G. § 2K2.1, cmt. n. 10.

By its terms, then, § 2K2.1(b)(2) permits a downward adjustment only when the defendant shows that he possessed *all* of his firearms *solely* for lawful sporting purposes or collection. And the commentary instructs that the "circumstances of possession" bear on whether the defendant possessed the firearms "solely" for these lawful purposes.

Leonard argues that he satisfies these requirements because the evidence shows that he used the rifle only for legitimate purposes once he purchased it. Relying on the Supreme Court's definition of "use" in *Bailey v. United States,* 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), he argues that " 'use' impl[ies] action and

implementation," *id.,* and therefore occurs post-acquisition. As he sees it, there is a material difference between firearm acquisition and firearm possession, and his misconduct in obtaining the Henry repeating rifle does not affect his use of it thereafter. Adding a firearm to a living room display, no matter how the firearm is acquired. Leonard reasons, amounts to permissible "use" of the weapon.

In one sense, Leonard is right. Once he obtained the rifle, the evidence does suggest that he used it only for collection purposes. And in fact this Henry repeating rifle was a collector's item. *See* Henry Repeating Arms Company—History, *at* http://www.henryrepeating.com/history.cfm (last visited April 15, 2004) (noting that the Henry Repeating Rifle was patented in 1860 as the first lever action repeating rifle and that it gave "a single man the firepower of a dozen marksmen armed with muzzle-loading muskets"). But to say that Leonard "used" the firearm solely for legitimate purposes is not to say that he "possessed" the firearm "solely" for legitimate purposes, which is what the Guideline provision requires and which is what Leonard had the burden of proving by a preponderance of the evidence. *See Morrison,* 983 F.2d at 732–33. In trying to meet that burden. Leonard was forced to acknowledge that he acquired the firearm through illegal means, a fact that the district court legitimately inferred casts doubt on his claim that he possessed the weapon "solely" for lawful collection purposes.

Adding to that doubt is the commentary to the provision, which tells district courts to consider the "[r]elevant surrounding circumstances." including (but not limited to) "the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's

criminal history (*e.g.*, prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law." U.S.S.G. § 2K2.1, cmt. n. 10. One "[r]elevant surrounding circumstance[ ]," as the district court correctly concluded, is how Leonard acquired the gun. Defendants who steal a firearm, remove it from a crime scene or buy it in an illegal drug transaction understandably face a more difficult burden in showing that they possessed the gun solely for legal purposes. No matter the ultimate purpose to which a gun is put, a district court may legitimately infer that the illegal acquisition of it creates a "[r]elevant surrounding circumstance[ ]" that is not compatible with possessing the weapon solely for lawful sporting or collection purposes. Indeed, if it is relevant to this inquiry to consider the defendant's prior criminal history, it is surely relevant to consider one "surrounding circumstance[ ]." namely that the defendant acquired the firearm by illegal means. *See United States v. Andrews*, No. 94–5109, 1994 WL 717589, 1994 U.S.App. LEXIS 36707, at *12 (4th Cir. Dec. 29, 1994) (noting that the defendant's purchase of stolen guns created unlawful possession under state law and disqualified him from a § 2K2.1(b)(2) reduction); *cf. United States v. Anderson*, 94 Fed.Appx. 402, 403, 2004 U.S.App. LEXIS 4872, at *4 (8th Cir.2004) (noting that illegal concealment of a weapon in a truck sufficed to render defendant ineligible for a § 2K2.1(b)(2) reduction): *United States v. Murray*, No. 93–50450, 1994 WL 587391, 1994 U.S.App. LEXIS 30021, at *8 (9th Cir. Oct. 26, 1994) (noting that because the defendant had been convicted of a misdemeanor for unlawfully possessing a weapon in his car, he was not entitled to a § 2K2.1(b)(2) reduction).

The cases upon which Leonard relies do not alter this conclusion. *Bailey's* definition of "use" under 18 U.S.C. § 924(c)(1) does not control the interpretation of "possession" under this Guideline. *See United States v. Valentine*, 70 Fed.Appx. 314, 327–28 (6th Cir.2003) ("The Supreme Court in *Bailey* specifically limited its holding to convictions under 18 U.S.C. § 924(c)(1). and indicated that its holding did not apply to guideline enhancements for weapons possession."). *United States v. Clingan*, 254 F.3d 624 (6th Cir.2001). does not explain whether a defendant who illegally acquired a firearm is entitled to a § 2K2.1(b)(2) reduction. And while the Fifth Circuit in *United States v. Shell*, 972 F.2d 548, 552 (5th Cir.1992), observed that felons in possession of a firearm may receive this reduction, it did not conclude that a district court must give the reduction to a defendant who acquired the firearm illegally.

Judge Moore's dissent warrants a few additional observations. Our point is not that a district court *must* draw the factual inference that the illegal acquisition of a gun establishes that it was not "possessed ... solely for lawful sporting purposes or collection"; the point is that a district court *may* do so. In this instance, the district court observed that "most people generally speaking, if they want a gun for collection purposes, they don't deal drugs in exchange for it, and that just kind of gives me reason to suspect that it was not possessed solely for collection purposes. So my finding is that the sporting exception does not apply." While the Guideline does not compel this inference, it assuredly does not prohibit it. The Guideline itself distinguishes "possession" from "use," clarifying that lawful use does not necessarily establish lawful possession. The commentary invites district courts to consider any "[r]elevant surrounding circumstances" in applying the provision, which "include" (but are not limited to) the "location *and* circumstances of possession."

Where the defendant kept the gun ("location ... of possession") is one relevant factor; how he came to acquire it ("circumstance[ ] of possession") may be another. The commentary also invites district courts to consider "the defendant's prior criminal history" in deciding this factual question. If eligibility for the reduction may be rejected based exclusively on the inference that a defendant who used firearms illegally in the past may do so again, a district court surely may be skeptical of a request for the reduction arising from the illegal acquisition of a firearm. And that is particularly true in the case of an individual, like Mr. Leonard, who was barred from possessing firearms as the result of a domestic violence order prompted by allegations of physical abuse against his girlfriend.

The removal of the word "obtained" in the 1991 amendment to the provision does not alter this conclusion, as shown by the fact that the relevant commentary to the provision remained the same before and after the amendment. Had the previous use of the word "obtain" altered the meaning of the provision and the appropriate circumstances to consider in applying it, the previous commentary would have revealed that fact. It does not. The amendment, as a result, presumably was designed merely to remove a redundancy in the provision, not to alter its meaning. Moreover, "obtained" in the pre–1991 version of the Guideline addressed the purpose for which the firearm was acquired. *See* U.S.S.G., app. C. amend. 189 (effective Nov. 1, 1989) (reduction should be given "[i]f the defendant obtained or possessed the firearm or ammunition ... solely for lawful sporting purposes or collection"). Its removal in 1991 does not imply that a Court must disregard the *manner* in which the firearm was acquired as a "[r]elevant surrounding circumstance[ ]." Before 1991 and after, in other words, "lawful acquisition" bears on this inquiry. *United States v. Smeathers*, 884 F.2d 363, 364–65 (8th Cir.1989) (applying pre–1991 version of § 2K2.1).

Nor is there anything extraordinary about this reading of the provision. Why not allow a district court to consider the means by which defendants come to possess firearms in determining whether they have met their burden of showing that they possessed them solely for lawful collection and sporting purposes? Could a defendant remove a rifle from a murder victim, place the weapon in a sportsman's collection case, then argue that the court may not consider the means of acquisition? Could a defendant steal an antique weapon, put it in a collection, then bar inquiry into the means of acquisition? If a defendant uses illegal drugs as currency to acquire the gun, why not allow a district court to infer that the gun in turn may be used as currency to acquire drugs in the future? And because the gun in a drugs-for-firearms acquisition represents Exhibit A (or at least B) in the criminal investigation, why is the continued possession of the gun solely for lawful sporting and collection purposes? Leonard's reading of the Guidelines provision, in short, raises more questions than it answers.

In the end, the district court was not prohibited from considering the means by which Leonard acquired the Henry repeating rifle in determining his eligibility for a reduction under this Guideline provision. Having considered that fact, the district court did not commit clear error in finding that Leonard failed to satisfy his burden of showing that he possessed the Henry repeating rifle "solely" for lawful collection and sporting purposes.

## III.

For the foregoing reasons, we affirm.

MOORE, Circuit Judge, dissenting.

I respectfully dissent because the majority's reasoning rests on the paradoxical notion that an individual "uses" an object by the act of acquiring it. While I believe ultimately that Danny Leonard ("Leonard") may not be eligible for a reduction under § 2K2.1(b)(2), it is not by virtue of his illegal acquisition of a firearm that all parties agree was possessed solely as a collectible. Acquisition is not use because use first requires possession, which is possible only after acquisition is complete; one does not "use" a weapon in the process of buying it any more than one "uses" a screwdriver by purchasing it at the hardware store.

The text of the sentencing Guidelines is the natural starting point, but its plain language does not support the majority's interpretation. Section 2K2.1(b)(2) permits a downward adjustment if a defendant *"possessed* all ammunition and firearms *solely* for lawful sporting purposes or collection. *and* did not unlawfully discharge or *otherwise unlawfully use such firearms or ammunition."* § 2K2.1(b)(2) (emphasis added). In the past, we have construed § 2K2.1(b)(2) literally, *see United States v. Clingan,* 254 F.3d 624, 626 (6th Cir.2001), and our continued fidelity to the text requires an acknowledgment that the Guideline includes only the terms "use" and "possessed," but not "acquire" or "obtained." The definition of the word "use" presupposes that one controls the object in question. *See* Black's Law Dictionary 1541 (6th ed. 1990) ("To make use of; ... to employ; ... to utilize"). Similarly, "possess" does not at all refer to the way in which an individual comes to own an object. *See id.* at 1162 ("[T]o have in one's actual and physical control; to have

the exclusive detention and control of; to have and hold as property"). By contrast, "acquire" and "acquisition" refer to an entirely different set of actions that are not addressed by the plain language of the Guideline. *See id.* at 24 (defining "acquire" as "[t]o gain by any means ...: to get as one's own." and defining "acquisition" as "the act by which one acquires or procures the property in anything").

The contrast between the text of § 2K2.1(b)(2) and that of its predecessors helps to explain why neither "use" nor "possessed" encompasses manner of acquisition. Section 2K2.1(b)(2)'s predecessor, § 2K2.1(b)(1), provided for a downward adjustment "[i]f the defendant *obtained or possessed* the firearm or ammunition solely for lawful sporting purposes or collection." USSG. Appendix C, amend. 189 (eff. Nov. 1, 1989) (emphasis added).[1] It is not entirely obvious whether the earlier Guideline's use of the word "obtained" actually addressed the manner of acquisition, but one court interpreted the Guideline in that fashion. *See United States v. Smeathers,* 884 F.2d 363, 365 (8th Cir. 1989) (reading the now-defunct Guideline to require both lawful acquisition and lawful possession), cited by Maj. Op. at 602. Yet, even if "obtained" referred to manner of acquisition, the current Guideline does not contain the word "obtained." Any case decided prior to the current Guideline's effective date of November 1991, such as *Smeathers,* is irrelevant by virtue of its obsolescence. The majority reasons that the removal of the word "obtained" should not affect our interpretation of the new Guideline, but surely that alteration is acutely relevant given that the only federal court to rule that lawfulness of acquisition has any bearing (*Smeathers*) interpreted

---

1. The original 1987 version of the Guideline, demarcated as § 2K2.1(b)(2), provided: "If the defendant obtained or possessed the firearm solely for sport or recreation, decrease by 4 levels."

that earlier and significantly different Guideline.

The Commentary to the Sentencing Guidelines provides some additional enlightenment, but it certainly does not expressly or even impliedly state that the manner of acquisition impacts the applicability of the Guideline. The majority relies heavily on the phrase "circumstances of possession," but it takes those words out of context, as the Commentary actually discusses "the location and circumstances of possession and actual use." § 2K2.1. Application Note 10. The natural grammar of the phrase indicates that "location" and "circumstances" each modify "possession" and "actual use," such that the Commentary advises the district court to consider the "location of possession and actual use" and "the circumstances of possession and actual use." For example, a district court may evaluate where a defendant stores a firearm (mounted on a wall or in the glove compartment of an automobile) or where the defendant uses that firearm (at a shooting range or in the course of a crime). Yet even taken by itself, "circumstances of possession" refers only to the manner in which a firearm owner controls a weapon after acquisition. The phrase, after all, is "circumstances of possession." not "circumstances of acquisition." The fact that the Commentary did not change when the Sentencing Commission deleted the word "obtained" does not alter the conclusion that the phrase "circumstances of possession"—that is the circumstances of "actual and physical control." Black's Law Dictionary 1162—does not address manner of acquisition.

The plain language of the Guideline and the accompanying Commentary demonstrates that there are several ways in which a defendant can disqualify himself from the downward adjustment, but unlawful acquisition is not one of them. To enjoy the benefits of the reduction, a defendant must prove: 1) that every firearm is possessed for only one of two purposes, sport or collection; and 2) that every firearm has not been unlawfully discharged or unlawfully used. Accordingly, the downward adjustment may not be available for several different disqualifying reasons: a defendant possesses a gun for a purpose other than sport or collection, such as for self-defense or in order to harm another; a defendant possesses a gun solely for use at a shooting range, but then discharges the gun illegally by shooting out street lights: a defendant possesses a rifle solely for hunting, but unlawfully uses the rifle by hunting deer off-season: or, a defendant possesses a pistol as a collectible, but unlawfully uses the pistol to threaten his or her spouse. *See, e.g., United States v. Morrison,* 983 F.2d 730, 732 (6th Cir.1993) (.357–magnum was not used solely for hunting purposes when it did not have a scope, it was concealed in a shoulder holster, and defendant did not possess any other hunting equipment); *United States v. Wilder,* 12 Fed.Appx. 297, 298 (6th Cir. 2001) ("Firearms possessed for sport or collection generally are not kept loaded and secreted behind a headboard."). However, there is no reason why acquiring a gun in an illegal manner bars the application of § 2K2.1(b)(2) because the way in which a person comes to possess a firearm does not impact the manner in which the person possesses or uses the firearm.

There *is* a clear reason why the district court *may not* account for the manner of acquisition: there is no authority to do so under the Guidelines. The district court's unverified conclusion that most individuals do not use drugs to purchase a collectible firearm highlights its error. The assumption that a drugs-for-firearms swap automatically negates the possession and use of a firearm as a collectible represents an impermissible logical leap with no factual

or statutory basis. Perhaps if Leonard had a history of swapping narcotics for firearms, and then reselling the firearms for cash, the district court could infer that Leonard planned to sell the Ted Williams rifle instead of displaying it as a collector's item, but there is no evidence to support such a finding. The district court might also have been correct in its inference if any aspect of the Guideline or its Commentary had discussed acquisition, as opposed to possession. Instead, the district court's conclusion that manner of acquisition can be considered in evaluating the applicability of § 2K2.1(b)(1) stemmed from its tautological reasoning that "use is use." J.A. at 115. The majority asks why the district court should not be allowed "to consider the means by which defendants come to possess firearms." Maj. Op. at 9. The answer is simple: we must deal with the Guideline as it is written, and it does not reference manner of acquisition. While the majority poses an interesting normative question, that inquiry is better addressed to the Sentencing Commission, which needs only to amend the Guideline if it wishes to permit district courts to consider the means of acquisition.

The essence of my disagreement with the majority stems from the simple fact that § 2K2.1(b)(2) presumes possession and by its plain terms concerns how a defendant controls and utilizes a weapon *after*, but not *during* acquisition. Leonard did not possess the weapon until after the drugs-for-rifle exchange was completed. Once he owned the rifle, he possessed it solely as a collectible, and there is no evidence that he unlawfully discharged or used it in any other way. The fact that Leonard used a controlled substance as a bartering tool to obtain the weapon is irrelevant for the purposes of § 2K2.1(b)(2), even though it forms the kernel of the underlying criminal charge for which Leonard is being sentenced.

A hypothetical variation on the facts highlights the majority's fundamental error: If Leonard sold his .22–Ted–Williams rifle, which he had inherited from his father and possessed solely as a collectible, for the purposes of acquiring heroin, he would be "using" the weapon in an unlawful way. *Cf. Clingan*, 254 F.3d at 626 (6th Cir.2001) (declining to adjust defendant's sentence when defendant "did not collect the firearms solely for the purpose of amassing a gun collection, but for the competing purpose of converting used automobiles into currency by using firearms as bartering tools"); *United States v. Williams*, 76 Fed.Appx. 54, 55 (6th Cir. 2003) ("Williams did not possess the firearm 'solely' for sporting purposes, because he acknowledged that he took possession of the firearm in order to pawn it in exchange for cash."). The converse is true here: Leonard used drugs as a currency to purchase the Henry rifle rather than "using" the rifle to acquire drugs, money, or other items.

Nonetheless, Leonard still may not eligible for a § 2K2.1(b)(2) reduction. Leonard may not have possessed the 30/30 Marlin rifle, which was discovered in his bedroom, *solely* for lawful sporting purposes or collection. The Marlin rifle was loaded and kept outside a gun case that contained other collectible guns. Few individuals who possess a rifle solely for sporting or collection purposes would leave a loaded rifle in their bedroom. *See United States v. Vertz*, 40 Fed.Appx. 69, 76–77 (6th Cir.2002) (handgun was not possessed solely for sporting or collection when it was kept loaded on a living room table and defendant admitted it was used for self-defense, apparently for protection against bears); *United States v. Lewitzke*, 176 F.3d 1022, 1028 (7th Cir.1999) (holding that sporting provision did not apply when guns were found fully loaded in a closet

and under a bed); *United States v. Dudley*, 62 F.3d 1275, 1277 (10th Cir.1995) ("[T]he fact that the guns were loaded cuts against the contention that they were *solely* for sporting or collection purposes, rather than for personal protection purposes."). The district court did not find any facts regarding the Marlin rifle. I would therefore vacate the district court's judgment and remand in order to permit the district court to determine whether the Marlin rifle was possessed in a manner commensurate with § 2K2.1(b)(2).